**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———

**No. 14-2375**

———

JOHN VANNOY,

        Plaintiff - Appellant,

    v.

THE FEDERAL RESERVE BANK OF RICHMOND,

        Defendant - Appellee.

———

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. John A. Gibney, Jr., District Judge. (3:13-cv-00797-JAG)

———

Argued: March 24, 2016             Decided: June 28, 2016

———

Before AGEE and WYNN, Circuit Judges, and Thomas D. SCHROEDER, United States District Judge for the Middle District of North Carolina, sitting by designation.

———

Affirmed in part, vacated in part, and remanded by published opinion. Judge Agee wrote the opinion, in which Judge Wynn and Judge Schroeder joined.

———

**ARGUED:** Mary Ann Kelly, THE LAW OFFICES OF MARY ANN KELLY, Fairfax, Virginia, for Appellant. David E. Nagle, JACKSON LEWIS PC, Richmond, Virginia, for Appellee. **ON BRIEF:** Crystal L. Tyler, JACKSON LEWIS PC, Richmond, Virginia, for Appellee.

———

AGEE, Circuit Judge:

John Vannoy sued his former employer, the Federal Reserve Bank of Richmond ("FRBR"), for interference and retaliation in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq., and failure to accommodate and discriminatory discharge in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. The district court granted summary judgment in FRBR's favor as to all of the claims.

For the reasons discussed below, we affirm the district court's judgment as to the FMLA retaliation claim and the ADA claims. However, because genuine issues of material fact exist as to whether FRBR interfered with Vannoy's FMLA rights by providing him defective notice that omitted his right to reinstatement at the conclusion of the medical leave term, we hold that summary judgment as to that claim was not warranted. Accordingly, we vacate that part of the district court's judgment and remand for further proceedings as to Vannoy's FMLA interference claim.

I. Factual and Procedural Background[1]

---

[1] Reviewing de novo the district court's grant of summary judgment to FRBR, we "view the facts and all justifiable inferences arising therefrom in the light most favorable to" (Continued)

2

Vannoy worked for FRBR from 1994 until his termination on December 21, 2010, at which time he held the position of Project Construction Manager / Technical Services Director within FRBR's Facilities Management Department. By the summer of 2010, Vannoy's supervisors, Robert Minteer and Mattison Harris, noticed Vannoy was having problems with his work and attendance. In July 2010, Harris reported his concern that Vannoy may be depressed to FRBR's Medical Director, Dr. Victor Brugh.

Dr. Brugh, who had treated Vannoy for depression previously, was aware of Vannoy's history of depression "going way back," and that Vannoy had taken antidepressant medications "for a long time." J.A. 419-20.[2] As the Medical Director of the Health Services Department, Dr. Brugh was responsible for core aspects of FRBR's FMLA and ADA compliance, including: evaluating and treating employees; overseeing administration of short term disability and ADA benefits; working closely with human resources on health and disability related benefits; overseeing and reviewing applications for FMLA leave; and working with FRBR departments in connection with employee performance issues potentially related to health problems. The record does not

_____

Vannoy, the nonmoving party. Libertarian Party of Va. v. Judd, 718 F.3d 308, 312 (4th Cir. 2013). This recitation of facts conforms to that standard.

[2] This opinion omits internal marks, alterations, citations, emphasis, or footnotes from quotations unless otherwise noted.

3

reflect that Dr. Brugh ever spoke with Vannoy about his rights and responsibilities under the FMLA.

On September 23, 2010, Vannoy saw Mimi Kline, a licensed professional counselor, who diagnosed him with "major depression" and noted his need for "an in-patient 30-day program." J.A. 169.

Beginning on October 22 and lasting through November 15, Vannoy had several unscheduled absences from work, which he cleared informally with his supervisors by text message or email. The record does not indicate whether these absences were to seek medical treatment. However, the record does show that Vannoy was admitted to St. Mary's Hospital on November 10 for psychiatric treatment. His family informed Harris and Dr. Brugh that Vannoy was in the hospital, and Dr. Brugh spoke directly with Vannoy during his hospital stay. Vannoy's physicians recommended that he enter a 30-day rehabilitation program for treatment of depression and alcohol dependency, but Vannoy refused, expressing concern that taking additional time off from work would result in termination. Vannoy was discharged from the hospital on November 13.

Around that time, Vannoy submitted his application for short term disability, which also functioned as a request for FMLA leave. To that application, Vannoy attached a physician's statement from his primary care doctor taking him out of work

4

from November 10 to December 10. Based on these documents, FRBR determined and notified Vannoy that he was eligible for leave under the FMLA through December 10.

The parties' accounts diverge as to whether Vannoy received sufficient individualized notice of his FMLA rights and responsibilities as required by the Act. FRBR represents that it sent Vannoy the applicable notice document on November 16, but Vannoy asserts that he did not receive it. In any event, the notice FRBR claims to have sent omitted reference to job protection rights, the precise information Vannoy contends he needed to answer his concerns that continued absences for treatment of his depression and alcoholism would result in termination.

Fearful of losing his job, Vannoy reported to work on November 15 without a doctor's note and well before the end of his approved FMLA leave period. FRBR sent Vannoy home with instructions that he could not return to work until he obtained a release from his physician. Shortly thereafter Vannoy provided FRBR a doctor's note, allowing him to return to "full work duty" as of November 15. J.A. 203. Vannoy returned to work on November 16.

On November 18, Vannoy arranged a meeting with Minteer and Harris to follow up about his recent hospitalization and ongoing medical issues. Apparently, the FMLA was not discussed during

5

this meeting, though Vannoy states he was "reassured that [his] job was not in jeopardy." J.A. 118. Vannoy contends he reiterated to his supervisors that he "wanted . . . to work with them and to work with the bank to keep [his] job." Id.

On November 30, FRBR sent Vannoy on a three-day work assignment in Baltimore. Vannoy drove a company vehicle and stayed in a hotel for that period at FRBR's expense, but he did not report to work on the project. The record provides only a hazy account of Vannoy's purported reason for the three-day absence. Nonetheless, when Vannoy returned to FRBR's Richmond office, he was placed on administrative leave pending a decision about his failure to communicate the unscheduled absence from work while in Baltimore. On December 16, Vannoy was placed on a performance improvement plan, which contained an employee portion that Vannoy was to complete by December 20.

On December 20, Vannoy informed his supervisors that he would not be able to report to work that day. Upon his return to work the following day, Vannoy received an email from Harris instructing him to complete and submit the employee portion of the performance improvement plan that day. Contending that he was unable to complete the performance improvement plan, Vannoy left work without authorization and went home. FRBR terminated Vannoy's employment effective that day in a letter citing the failure to properly communicate unscheduled time off from work

6

and insubordinate behavior in leaving work despite instructions to complete the performance improvement plan.

After his termination and following exhaustion of his administrative remedies, Vannoy filed a complaint in the United States District Court for the Eastern District of Virginia alleging FRBR violated his rights under the FMLA and the ADA. FRBR moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. The district court granted FRBR's summary judgment motion as to all claims, concluding that Vannoy failed to give sufficient notice of his need for a medical leave of absence and he was terminated for misconduct related to the Baltimore trip.

Vannoy timely appeals from the district court's order granting summary judgment to FRBR. We have jurisdiction to review the district court's final order under 28 U.S.C. § 1291.

## II. Analysis

We review a district court's grant of summary judgment de novo, applying the same standard as the district court. Halpern v. Wake Forest Univ. Health Scis., 669 F.3d 454, 460 (4th Cir. 2012). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Bostic v. Schaefer, 760 F.3d 352, 370 (4th Cir. 2014). "A

dispute is genuine if a reasonable jury could return a verdict for the nonmoving party." Libertarian Party of Va., 718 F.3d at 313. "A fact is material if it might affect the outcome of the suit under the governing law." Id. In addition to construing the evidence in the light most favorable to Vannoy, the non-movant, we also draw all reasonable inferences in his favor. See Halpern, 669 F.3d at 460.

## A. FMLA Interference

Vannoy argues that FRBR failed to provide him individualized notice of his job protection rights as required by the FMLA. This omission, Vannoy posits, caused prejudice to him as it affected his ability to take the medical leave he claims to have needed. Vannoy also states, without elaboration, that he did not receive the notice from FRBR that FRBR says it sent him. FRBR represents that it sent Vannoy individualized notice by email on November 16, 2010 and, in any event, it granted Vannoy's medical leave request and provided notice that he had 480 hours of FMLA leave available.

The FMLA entitles eligible employees to take twelve weeks of leave during any twelve-month period for a "serious health condition that makes the employee unable to perform the functions" of his job. 29 U.S.C. § 2612(a)(1)(D). Following this leave period, an employee has the right to reinstatement to

8

his or her original position or an equivalent post.  Id. § 2614(a)(1).  It is unlawful under the FMLA for an employer to interfere with an employee's exercise of or the attempt to exercise any right under the statute.  Id. § 2615(a)(1).

The FMLA requires that employers provide an individual, written notice to affected employees that an absence qualifies under the FMLA.  See 29 C.F.R. § 825.300.[3]  There are two types of individualized notice that the employer must give an employee who may be entitled to FMLA leave: a "rights and responsibilities notice," id. § 825.300(c); and a "designation notice," id. § 825.300(d).  At issue in this case is whether the rights and responsibilities notice from FRBR was legally sufficient.  And if a notice violation occurred, the "FMLA's comprehensive remedial mechanism" grants no relief absent a showing that the violation prejudiced Vannoy.  Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002).  Thus, if FRBR violated the FMLA's notice requirements, and Vannoy can show prejudice deriving from that violation, he has stated a claim for interference.

---

[3] Unless otherwise indicated, all citations to the Code of Federal Regulations are to the version in effect at the time the described events took place.

9

1.

In the FMLA rights and responsibilities notice, "[e]mployers shall provide written notice detailing the specific obligations of the employee and explaining any consequences of failing to meet these obligations." 29 C.F.R. § 825.300(c)(1). "If the leave has already begun, the notice shall be mailed to the employee's address of record." Id. Such notice "must include," among other things, the employee's right to "restoration to the same or an equivalent job upon return from FMLA leave." Id. § 825.300(c)(1)(vi). The Department of Labor provides a prototype notice of rights and responsibilities for employers to use to ensure compliance. Id. § 825.300(c)(6).

The purpose of the employer notice requirements "is to ensure that employers allow their employees to make informed decisions about leave." Conoshenti v. Pub. Serv. Elec. and Gas Co., 364 F.3d 135, 144 (3d Cir. 2004). That purpose is thwarted when "the employee has not received the statutory benefit of taking necessary leave with the reassurance that h[is] employment, under proscribed conditions, will be waiting for h[im] when []he is able to return to work." Id. Thus, "[a]ny violations of the Act or of these regulations constitute interfering with" the exercise of an employee's rights. 29 C.F.R. § 825.220(b). An FMLA notice violation can be an actionable interference claim for which an employee may recover,

10

so long as he makes a showing of prejudice flowing from the violation. Ragsdale, 535 U.S. at 89 (holding employee must "ha[ve] been prejudiced by the violation" to obtain relief).

In the instant case, the notice FRBR purportedly sent failed to inform Vannoy of his right to job restoration at the conclusion of his medical leave term.[4] Under the FMLA regulations, a statement of the employee's right to job reinstatement must be included in the rights and responsibilities notice. See 29 C.F.R. § 825.300(c)(1)(vi).

---

[4] Vannoy asserts in a single sentence in his opening brief that he never received the FMLA rights and responsibilities notice FRBR purportedly sent, and that he first saw it in discovery in this litigation. While it is unclear whether he presented this contention below, the district court did not address it in its opinion. A plaintiff's assertion that he did not receive notice that his leave was designated as FMLA-qualifying could suffice in some circumstances to create a genuine issue of material fact as to whether an employer interfered with his rights under the FMLA. See Lupyan v. Corinthian Colleges, Inc., 761 F.3d 314, 322-23 (3d Cir. 2014) (engaging in a lengthy discussion of the "mailbox rule" and concluding the plaintiff's positive denial of receipt of FMLA notice sufficed to create an issue of fact for the jury); but see Bosiger v. U.S. Airways, Inc., 510 F.3d 442, 452-53 (4th Cir. 2007) (recognizing a presumption that an addressee receives letters of notice mailed to him in the bankruptcy context). We need not resolve this undeveloped argument, which the district court did not address in the first instance. The FMLA interference claim is resolved here for summary judgment purposes as the notice FRBR claims to have sent raises genuine issues of material fact as to prejudice. See Walker v. Prince George's Cty., 575 F.3d 426, 429 n.* (4th Cir. 2009) ("Judges are not like pigs, hunting for truffles buried in briefs."). Nevertheless, the district court may consider Vannoy's claim that he did not receive the notice document from FRBR in the first instance upon remand to the extent it is determined that Vannoy has properly raised it.

11

FRBR points to no evidence in the record that Vannoy received the required job reinstatement information. It does not contest that the only notice document in the record fails to show notice of Vannoy's job restoration rights. Therefore, we conclude that Vannoy established as fact, for purposes of FRBR's summary judgment motion, that FRBR's notice did not comply with the regulatory requirement of 29 C.F.R. § 825.300(c)(vi).

2.

Our inquiry, however, does not end with the determination that a violation of the FMLA notice provisions occurred. The FMLA "provides no relief unless the employee has been prejudiced by the violation." Ragsdale, 535 U.S. at 89. Vannoy accordingly must establish that he was prejudiced by FRBR's failure to provide notice of his right to job restoration.

Prejudice may be gleaned from evidence that had the plaintiff received the required (but omitted) information regarding his FMLA rights, he would have structured his leave differently. Lupyan, 761 F.3d at 324; Downey v. Strain, 510 F.3d 534, 537 (5th Cir. 2007) (finding prejudice where evidence showed employee "would have postponed her knee surgery to a time when it would not have caused her to exceed her FMLA allowance"); c.f. Dorsey v. Jacobson Holman, PLLC, 476 F. App'x 861, 862 (D.C. Cir. 2012) (concluding plaintiff could not show

12

prejudice where she "never returned to work" and "provides no record evidence whatsoever that she could have structured her leave differently").

The record in this case contains sufficient evidence to avoid summary judgment to FRBR that Vannoy – who returned to work prior to the expiration of the medical leave he initially requested – would have structured his leave differently had he known that his job was protected. Vannoy initially requested medical leave from November 10 to December 10, 2010, in accordance with the physician's note he provided FRBR. That leave was approved. However, Vannoy did not take the month-long leave term that he requested. Instead, he returned to work early and FRBR told him he would be permitted to work only after he provided a physician's note verifying he could resume work. Vannoy contends that had he known of his right to reinstatement at the conclusion of leave, he would have taken the full 30-day leave of absence set out in his initial FMLA application to obtain the inpatient treatment he claims to have needed. FRBR contests this evidence and offered its own evidence.

However, Vannoy's testimony on this point is unequivocal:

> I think [a notice of job protection rights] would have made a huge difference because I wouldn't have been so fearful of losing my job and I would have known I could have gotten help and that I had the support of the bank and that they wanted me to get well. And I could have gone to treatment, I could have gotten

13

help.  And I could have come back and I could have continued to be an excellent employee.

J.A. 305.  When asked again whether knowing that his job would be there when he returned for medical leave mattered, Vannoy reiterated that it "would have made a huge difference. Absolutely, I believe I would have" gone to treatment.  J.A. 305-06.  The supporting testimony from Vannoy's family is consistent with his testimony that he would have taken the full amount of his requested medical leave had he known his job was protected.  Indeed, after his termination, Vannoy completed a comprehensive inpatient treatment program.

Assessment of the credibility of these statements, and any countervailing evidence, rests squarely within the purview of the trier of fact.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (noting credibility determinations should not be made by the district court at summary judgment).  If, for example, a jury accepts Vannoy's evidence, it could conclude that Vannoy demonstrated he was prejudiced by FRBR's failure to provide him with the requisite notice and, thus, FRBR interfered with his rights under the FMLA.  See Lupyan, 761 F.3d at 323-24 (holding plaintiff could demonstrate prejudice even though she had "received all of the leave she was entitled to under the FMLA").

14

For these reasons, we hold that summary judgment was foreclosed because a genuine issue of material fact exists as to whether FRBR's failure to comply with the FMLA's notice requirements prejudiced Vannoy. The district court thus erred in granting summary judgment to FRBR on Vannoy's FMLA interference claim.[5]

---

[5] Without addressing the contents of the deficient notice, the district court reasoned that Vannoy's FMLA interference claim failed because FRBR approved his request for medical leave. We disagree. The fact that FRBR approved Vannoy's FMLA leave does not automatically foreclose his interference claim. This Court recognized that precept recently in Adams v. Anne Arundel County Public Schools, 789 F.3d 422, 427 (4th Cir. 2015). An FMLA interference claim "permit[s] a court to inquire into matters such as whether the employee would have exercised his or her FMLA rights in the absence of the employer's actions." Id. at 427. Although the plaintiff in Adams received his full entitlement of FMLA leave, the Court proceeded to ascertain whether his employer had nevertheless interfered with his FMLA rights "in a variety of ways that stopped short of actually denying him leave." Id. Finding no evidence to support the claim of interference in that record, the Court affirmed the district court's grant of summary judgment for the employer.

Vannoy presents a different case. Unlike the plaintiff in Adams, Vannoy did not take his full FMLA leave entitlement, but contends he would have taken additional medical leave had he received the job reinstatement notice. Vannoy's unconditional testimony is that he would have structured his leave differently - that he would have taken an extended period of medical leave so that he could go to inpatient treatment - had he known of his right to reinstatement. For summary judgment purposes, that evidence suffices to create a genuine issue of material fact as to whether FRBR interfered with Vannoy's FMLA rights. See Ragsdale, 535 U.S. at 91 ("[The] purpose of [an interference claim] is to permit a court to inquire into matters such as whether the employee would have exercised his or her FMLA rights in the absence of the employer's actions."); Lupyan, 761 F.3d at 323 (holding plaintiff, who was afforded her full entitlement of (Continued)

15

## B.    FMLA Retaliation

In addition to claiming FRBR interfered with his notice rights under the FMLA, Vannoy contends that FRBR terminated him in retaliation for taking FMLA-qualifying absences.  He argues that once FRBR became aware of the extent of his illness and his ongoing need for intermittent FMLA leave, it fired him.  Vannoy posits that the six-week timeframe between his initial request for medical leave and subsequent termination supports his view.  FRBR responds that Vannoy failed to demonstrate any causal link between his protected activity and later termination.  In addition, FRBR argues the six-week timeline does not evince a causal nexus, but actually negates it.  Moreover, FRBR contends it had no notice that Vannoy continued to suffer from depression and alcoholism because he gave vague and conflicting reasons for his absences.  And finally, FRBR argues it has offered a legitimate, non-retaliatory reason for any adverse employment action against Vannoy, and there is no evidence of pretext.

The FMLA provides proscriptive rights "that protect employees from discrimination or retaliation for exercising their substantive rights under the FMLA."  Dotson v. Pfizer, Inc., 558 F.3d 284, 294 (4th Cir. 2009).  FMLA retaliation

FMLA leave, could still show prejudice by demonstrating that "had she been properly informed of her FMLA rights, she could have structured her leave differently").

16

claims may rest on circumstantial evidence evaluated under the burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). An FMLA plaintiff claiming retaliation "must first make a prima facie showing that he engaged in protected activity, that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's protected activity." Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 551 (4th Cir. 2006). Once the plaintiff proffers evidence establishing his prima facie case, and the employer offers a non-retaliatory reason of the adverse action, the plaintiff "bears the burden of establishing that the employer's proffered explanation is pretext for FMLA retaliation." Id.

We assume - without deciding - that Vannoy can establish a prima facie case for FMLA retaliation. Nonetheless, he cannot prevail because FRBR has proffered overwhelming evidence that it terminated Vannoy because of his misconduct, about which there are no material factual disputes, and the record contains no evidence remotely suggestive of pretext.

The FMLA does not prevent an employer from terminating an employee for poor performance, misconduct, or insubordinate behavior. See Calhoun v. Dep't. of Labor, 576 F.3d 201, 214 (4th Cir. 2009) (holding failure to follow supervisor's instructions was insubordinate behavior that amounted to a

17

legitimate, non-retaliatory reason for adverse employment action); Throneberry v. McGehee Desha Cty. Hosp., 403 F.3d 972, 977 (8th Cir. 2005) ("The FMLA simply does not force an employer to retain an employee on FMLA leave when the employer would not have retained the employee had the employee not been on FMLA leave."). FRBR's legitimate, non-discriminatory reasons for terminating Vannoy include his misconduct in Baltimore, his failure to communicate properly about unscheduled absences, and his failure to complete the employee portion of the performance improvement plan. Vannoy does not dispute that the Baltimore incident occurred, that he was absent without authorization from work numerous times in 2010, and that he failed to timely complete his obligations under the performance improvement plan.

Vannoy instead speculates that FRBR's decision to terminate him was pretextual, but he makes no evidentiary showing in that regard. "[A] plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate non-discriminatory reasons for a discharge." Dockins v. Benchmark Commc'ns, 176 F.3d 745, 749 (4th Cir. 1999). It is not our role to second-guess FRBR's legitimate, non-discriminatory bases for terminating Vannoy where there is nothing in the record before us evincing retaliatory animus. See Feldman v. Law Enf't Assocs. Corp., 752 F.3d 339, 348 (4th Cir. 2014) (explaining that we do not "sit as

18

a kind of super-personnel department weighing the prudence of employment decisions"). To the contrary, the record supports FRBR's argument that it terminated Vannoy for the legitimate and documented job performance failures previously noted.

Vannoy's FMLA retaliation claim therefore fails.[6] Accordingly, the district court properly granted summary judgment to FRBR as to this claim.

## C. ADA Claims

Vannoy also appeals from the district court's decision that he had no valid claim that FRBR failed to accommodate his disabilities and discriminated against him in violation of the ADA. As with Vannoy's FMLA retaliation claim, the ADA does not require an employer to simply ignore an employee's blatant and persistent misconduct, even where that behavior is potentially tied to a medical condition. Jones v. Am. Postal Workers Union, 192 F.3d 417, 429 (4th Cir. 1999) (holding the ADA does not "require an employer to ignore such egregious misconduct by one of its employees, even if the misconduct was caused by the employee's disability"); Martinson v. Kinney Shoe Corp., 104

---

[6] To the extent Vannoy contends that his misconduct should be excused because it is related to the health condition for which he required FMLA leave, his argument lacks merit. "While absences for treatment of alcoholism are protected by the FMLA, absences caused by the use of alcohol are not." Scobey v. Nucor Steel-Ark., 580 F.3d 781, 788 (8th Cir. 2009).

19

F.3d 683, 686 n.3 (4th Cir. 1997) ("Misconduct—even misconduct related to a disability—is not itself a disability, and an employer is free to fire an employee on that basis."); see also 29 C.F.R. § 1630.16(b)(4) ("A covered entity . . . [m]ay hold an employee who engages in the illegal use of drugs or who is an alcoholic to the same qualification standards for employment or job performance and behavior to which the entity holds its other employees, even if any unsatisfactory performance or behavior is related to the employee's drug use or alcoholism."). Vannoy's ADA discriminatory termination claim fails for the same reasons that his FMLA retaliation claim lacked merit.

Further, as to Vannoy's ADA failure to accommodate claim, the district court's grant of summary judgment to FRBR was not erroneous. As the district court aptly noted, "[i]t is difficult to imagine an employer trying harder to help an employee to succeed." Vannoy v. Fed. Reserve Bank of Richmond, No. 3:13-CV-797, 2014 WL 6473704, at *5 (E.D. Va. Nov. 18, 2014). We therefore agree with the district court that even taking the facts and all reasonable inferences in his favor, Vannoy's ADA claims cannot survive summary judgment.[7]

_____

[7] Vannoy also appeals the district court's denial of his motion for a protective order in connection with subpoenas by FRBR seeking various post-termination employment records. Based on the record in this case, we conclude that the district court did not abuse its discretion in denying the discovery motion.

20

## III. Conclusion

For these reasons, we affirm the judgment of the district court as to Vannoy's FMLA retaliation claim and ADA claims. We vacate the grant of summary judgment as to Vannoy's claim that FRBR interfered with his FMLA rights by failing to provide sufficient notice and remand for further proceedings as to that claim.

<u>AFFIRMED IN PART,</u>
<u>VACATED IN PART,</u>
<u>AND REMANDED</u>