**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-2008**

STACY SAUNDERS,

Plaintiff - Appellant,

v.

METROPOLITAN PROPERTY MANAGEMENT, INC.,

Defendant - Appellee.

Appeal from the United States District Court for the Western District of Virginia, at Roanoke.  Elizabeth Kay Dillon, District Judge.  (7:17-cv-00159-EKD-RSB)

Argued:  January 28, 2020                          Decided:  March 18, 2020

Before MOTZ, KING, and KEENAN, Circuit Judges.

Affirmed in part, vacated in part, and remanded by unpublished opinion.  Judge Keenan wrote the opinion, in which Judge Motz and Judge King joined.

**ARGUED:**  Terry Neill Grimes, TERRY N. GRIMES, ESQ., PC, Roanoke, Virginia, for Appellant.  Monica Taylor Monday, GENTRY LOCKE, Roanoke, Virginia, for Appellee. **ON BRIEF:**  Brittany M. Haddox, GRIMES & HADDOX, P.C., Roanoke, Virginia, for Appellant.   Paul Granger Klockenbrink, GENTRY LOCKE, Roanoke, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

BARBARA MILANO KEENAN, Circuit Judge:

In this employment case, Stacy Saunders appeals from the district court's award of summary judgment in favor of her former employer, Metropolitan Property Management, Inc. (Metro). Her action against Metro alleged a hostile work environment and retaliation under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e through 2000e-17. After reviewing the record, we affirm the district court's award of summary judgment in favor of Metro on the hostile work environment claim. However, we conclude that there are genuine disputes of material fact with respect to the retaliation claim. We therefore vacate in part the district court's award of summary judgment and remand the retaliation claim for further proceedings.

I.

We construe the evidence in the light most favorable to Saunders, the party against whom summary judgment was awarded. *Vannoy v. Fed. Reserve Bank of Richmond*, 827 F.3d 296, 300 (4th Cir. 2016). Under this construction, we draw all reasonable inferences in Saunders' favor. *Id.*

Saunders' former employer, Metro, provides government-subsidized housing for low-income, elderly individuals throughout the southeastern part of the United States. Metro employed Saunders as a site manager at one of Metro's housing sites. As part of her job, Saunders supervised the work of Clayton Carter, the maintenance technician at that property.

On November 4, 2015, Saunders informed Joseph Moore, Metro's Director of Operations, that Carter had been sexually harassing her. Saunders sent Joseph Moore a picture of a sexually explicit note Carter had left on her computer keyboard, along with a letter that she had written describing Carter's prior pattern of sexual harassment.

In the letter, Saunders stated that Carter had made "sexual advances" toward her for about ten months. Saunders said that while Carter initially had focused his sexual comments on her appearance, his conduct later escalated. According to Saunders, Carter repeatedly asked her to have sex with him and, on one occasion, showed her a naked photograph of himself. Saunders alleged that Carter's conduct had made her feel "very uncomfortable" and "frightened," but acknowledged that she had not previously reported his conduct to Metro.

In response to Saunders' allegations, Metro immediately placed both Carter and Saunders on paid administrative leave and began an investigation. Joseph Moore stated that Metro placed Saunders on administrative leave "[b]ecause she made a[n] allegation of sexual harassment against Clayton Carter." The same day that Saunders made her complaint, Joseph Moore directed another employee to advertise Saunders' and Carter's positions on Craigslist, a job-listing website, because of "[t]he allegation of sexual harassment."

James Moore, Joseph Moore's brother and Metro's financial analyst, conducted the investigation of Saunders' complaint. The documents collected during the week-long investigation included Saunders' November 4, 2015 letter and statements from Carter, as

3

well as statements from two other employees.[1] James Moore also reviewed multiple tenant complaints alleging breaches of confidentiality by Saunders and photographs of Saunders' and Carter's office spaces.

In his statements, Carter admitted that he and Saunders had flirted with each other, but accused Saunders of touching him inappropriately on multiple occasions by "hit[ting]" or "smack[ing]" him "on the butt." At first, Carter denied writing the sexually explicit note to Saunders, but he later confessed that he had written the note and had lied about it because he was afraid of losing his job.

Carter also reported that Saunders improperly had disclosed confidential tenant information. In addition to this reported violation, James Moore discovered during his investigation that Saunders had committed numerous other workplace infractions.

After concluding the investigation, James Moore recommended that both Carter and Saunders be fired. Joseph Moore terminated Saunders' employment, in part because "[t]he whole timing aspect did not boast in her favor." He also prepared a disciplinary action form based on the results of James Moore's investigation, which included the following reasons for Saunders' termination: (1) failure to return a supervisory coaching form; (2) disclosure of confidential information to tenants and family members; (3) removal of the

---

[1] The other employees, Tammy Reed and Scott Quesenberry, were the site manager and maintenance technician, respectively, for another Metro property in Virginia. Metro is a small non-profit corporation, employing about 50 people in total. Metro has about 20 housing sites, and each site is staffed with two employees, a site manager and a maintenance technician.

property waiting list from the office; (4) disorganization; and (5) her interaction with Carter that had "turned [into] a lustful and flirtatious workplace relationship."

With respect to Carter's employment, the parties dispute whether Metro offered Carter the option of transferring to another property in lieu of termination. Carter testified that he was offered a transfer but, when he declined the offer, Metro viewed this action as Carter's resignation. Joseph Moore conceded that Carter initially may have been offered a transfer, but maintained that Carter ultimately was terminated from his employment.

After Saunders was fired, she filed suit against Metro in the district court, alleging a hostile work environment and retaliation in violation of Title VII. The day before Metro's responsive pleadings were due, Metro's attorney asked Saunders to agree that Metro be given additional time to respond because he had miscalculated the filing deadline and was "in the final stages of joining the Virginia Bar." Saunders' counsel did not respond to this request, and Metro did not ask the district court for an extension of time to file an answer.

When Metro failed to file its responsive pleadings one month after the deadline, Saunders moved for entry of default. The district court made a finding of default on the issue of liability, and scheduled a jury trial on the issue of damages.

Metro moved to set aside the entry of default under Federal Rules of Civil Procedure 55(c) and 60(b). The court granted Metro's motion. The court based its decision on a finding of "excusable neglect" largely due to the actions of Metro's trial attorney, and explained that "the interest in reaching the merits controls." The court awarded Saunders attorney's fees and costs incurred "in opposing the motion to set aside the default judgment."

5

Metro filed an answer to Saunders' complaint and a motion for summary judgment. The district court granted Metro's summary judgment motion. The court held that Saunders' hostile work environment claim failed because Metro was not aware of Carter's alleged harassment before Saunders' report on November 4, 2015, and because Metro had conducted an adequate investigation after receiving that report. The court also held that Saunders' retaliation claim failed, because Saunders could not demonstrate that Metro's asserted reasons for terminating her employment were pretextual. Saunders now appeals.

II.

Initially, we find no merit in Saunders' argument that the district court abused its discretion in setting aside the entry of default. *See Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204 (4th Cir. 2006) (setting forth the standard of review). A decision to set aside an entry of default "lies largely within the discretion of the trial judge and [the court's] action is not lightly to be disturbed by an appellate court." *Id.* (citation omitted). Moreover, the law disfavors disposition by default and accords preference to resolving a case on its merits. *See Tazco, Inc. v. Dir., Office of Workers Comp. Program*, 895 F.2d 949, 950 (4th Cir. 1990); *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 811 (4th Cir. 1988).

Under Federal Rule of Civil Procedure 55(c), a "court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." When ruling on a Rule 55(c) motion, a court considers the following factors: "whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the

6

personal responsibility of the defaulting party, the prejudice to the [nonmoving] party, whether there is a history of dilatory action, and the availability of sanctions less drastic." *Payne*, 439 F.3d at 204-05.

Contrary to the procedure employed by the district court, we do not review the default motion under Federal Rule of Civil Procedure 60(b), because the district court had not entered "final default judgment." Fed. R. Civ. P. 55(c). We recently explained in *Fidrych v. Marriott International, Inc.*, --- F.3d ---, No. 18-2030, 2020 WL 986674, at *3 (4th Cir. Mar. 2, 2020), that there can be "no final judgment of default" until damages are awarded. Because Saunders had yet to be awarded damages, there was no "final default judgment" entered in this case. Fed. R. Civ. P. 55(c). Accordingly, Rule 60(b) did not apply, and the motion should have been reviewed exclusively under Rule 55(c). *Fidrych*, 2020 WL 986674, at *3.

Nevertheless, we have reviewed the record and conclude that the district court did not abuse its discretion in setting aside the entry of default against Metro. The court properly considered the factors applicable to a Rule 55(c) motion and correctly identified Metro's trial attorney as the party responsible for failing to timely respond to Saunders' complaint. By granting Metro's motion to set aside the entry of default and by awarding Saunders attorney's fees, the court reached a reasonable resolution of the issue. Accordingly, we affirm the district court's decision setting aside the entry of default.

7

III.

We review the district court's decision granting summary judgment de novo. *Evans v. Int'l Paper Co.*, 936 F.3d 183, 191 (4th Cir. 2019). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A.

We begin by addressing Saunders' hostile work environment claim. Under Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a), (a)(1). A hostile work environment claim is actionable under Title VII, because "an employee's work environment is a term or condition of employment." *Walker v. Mod-U-Kraf Homes, LLC*, 775 F.3d 202, 207 (4th Cir. 2014) (citation omitted).

To prevail on a hostile work environment claim based on sexual harassment, a plaintiff must show that the harassment: (1) was unwelcome; (2) was based on her sex; (3) was "sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere[;]" and (4) was imputable to her employer. *Evans*, 936 F.3d at 192. Because Metro concedes that the record contains disputed evidence regarding the first three factors, we focus our analysis on the fourth factor, the issue whether Carter's conduct was imputable to Metro.

8

Saunders contends that Metro is liable for Carter's sexual harassment, because once Metro indisputably was aware of Saunders' allegations, Metro failed to conduct a thorough investigation and instead resolved the dispute by unlawfully terminating her employment. We disagree with Saunders' analysis.

An employer may be held liable for an employee's conduct "if the employer had actual or constructive knowledge of the existence of a hostile working environment" and failed to take "prompt and adequate remedial action." *Amirmokri v. Balt. Gas & Elec. Co.*, 60 F.3d 1126, 1130 (4th Cir. 1995). Until an employee has made "a concerted effort to inform the employer" about harassing conduct unknown to the employer, that "employer cannot be expected to correct [the] harassment." *Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 268 (4th Cir. 2001) (citation omitted). And once informed of the harassment, if an employer takes "prompt remedial action reasonably calculated to end the harassment," the employer cannot be held liable. *Katz v. Dole*, 709 F.2d 251, 256 (4th Cir. 1983).

It is undisputed that Saunders did not report any sexual harassment to Metro until November 4, 2015, when she submitted the sexually explicit note to Joseph Moore along with her allegations of prior harassment. Immediately after receiving Saunders' complaint, Metro promptly began an investigation and placed both Saunders and Carter on paid administrative leave. Given that Carter also had accused Saunders of sexual misconduct, Metro's decision placing both employees on paid leave was "reasonably calculated to end" the alleged harassment between the two individuals. *Id.*

9

The record reflects that the ensuing investigation was reasonably thorough, with James Moore reviewing Saunders' November 4, 2015 letter and collecting statements from Carter, from other Metro employees, and from various tenants before making his recommendation.[2] And the investigation was completed in a timely fashion. For these reasons, we conclude that there are no disputed issues of material fact concerning the investigation Metro conducted, and that the undisputed facts establish that Metro took "prompt remedial action reasonably calculated to end the harassment." *Id.* Accordingly, liability for Carter's conduct cannot be imputed to Metro.

Our conclusion is not altered by Saunders' misplaced assertion that Metro's response was unlawful because Metro "fir[ed] the victim." In making this argument, Saunders improperly confuses her hostile work environment claim with her retaliation claim. Termination of employment is a "discrete act[,]" which is "different in kind" from a claim that an employer has maintained or permitted a hostile work environment. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-15 (2002). A hostile work environment claim arises from "severe or pervasive" harassment based on the employee's sex. *Evans*, 936 F.3d at 192. The discrete act of job termination does not constitute "severe or pervasive" harassment and does not negate an otherwise adequate investigation conducted by an employer. *Id.*; *see Morgan*, 536 U.S. at 114-15. We therefore affirm the

---

[2] None of the minor complaints Saunders raises regarding the manner in which James Moore conducted the investigation undermine our conclusion that the investigation was adequate as a matter of law.

district court's award of summary judgment in Metro's favor on Saunders' hostile work environment claim, and we proceed to address Saunders' separate claim of retaliation.

B.

Title VII prohibits retaliation against an employee who has "opposed . . . an unlawful employment practice," or "has made a charge" of an unlawful employment practice. 42 U.S.C. § 2000e-3(a). A prima facie case of retaliation requires proof that: (1) the plaintiff engaged in protected activity; (2) the plaintiff suffered a "materially adverse" employment action; and (3) there was a "causal connection between the protected activity and the adverse action." *Evans*, 936 F.3d at 195. If the plaintiff can "establish[] a prima facie case of retaliation, the burden shifts to the [employer] to articulate a legitimate, non-retaliatory reason for the adverse employment action." *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 407 (4th Cir. 2005). If the employer articulates a non-retaliatory reason for the employee's termination, the burden shifts back to the employee to demonstrate that the reason proffered by the employer was pretextual. *Id.*

Saunders does not dispute that Metro accurately identified certain performance-related issues on her disciplinary action form, namely, that she failed to return a supervisory coaching form and that she removed the property waiting list from the office.[3] However, Saunders contends that these alleged work-related reasons for terminating her employment were pretext for retaliation, because Metro did not view the identified incidents as serious

---

[3] Although Saunders partly disputes the allegations that she disclosed confidential tenant information and that her office was disorganized, we decline to evaluate her job performance. *See DeJarnette v. Corning Inc.*, 133 F.3d 293, 298-99 (4th Cir. 1998).

11

enough to warrant firing her until she made her complaint of sexual harassment. Saunders also relies on the many statements made by Joseph Moore suggesting that her protected activity was the basis for her termination. And finally, Saunders points to Metro's failure to offer her a transfer to a different location, an offer that Metro made to Carter, as evidence that Metro penalized Saunders for filing a complaint.

In response, Metro contends that Saunders' employment was terminated for legitimate performance-related reasons discovered during the investigation. Moreover, according to Metro, regardless whether Carter was offered a transfer at the outset of the investigation, Carter's employment also ultimately was terminated. We disagree with Metro's position.

An employee who asserts a right protected under Title VII is "shielded from retaliation on account of [that] assertion" but is not "insulated from the consequences of . . . poor performance." *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008). This Court may intervene in an employer's decision to fire an employee only if the reason for that decision was the employee's protected activity. *See Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015); *see also DeJarnette v. Corning Inc.*, 133 F.3d 293, 298-99 (4th Cir. 1998). We will "not sit as a kind of super-personnel department weighing the prudence of employment decisions." *DeJarnette*, 133 F.3d at 299 (citation omitted). Our duty instead is to determine "whether the reason for which the [employer] discharged the plaintiff was discriminatory." *Id.* (citation omitted). Accordingly, an employee must "show that retaliation was the real reason" she was fired, and that she "would not have been terminated but for her employer's retaliatory animus." *Foster*, 787 F.3d at 252 (citations

12

and internal quotation marks omitted).  Evidence that an employer gave a similarly situated employee more favorable treatment can be "especially relevant" evidence of pretext.  *Laing v. Fed. Express Corp.*, 703 F.3d 713, 719 (4th Cir. 2013) (citation omitted).

We recognize that before Saunders was fired, she had received both positive and negative performance reviews.  However, we decline to evaluate the merits of her performance as an employee.  *See DeJarnette*, 133 F.3d at 298-99.  We conclude only that disputed issues of material fact remain with respect to the issue whether she would have been fired but for her complaint of sexual harassment.  *See Foster*, 787 F.3d at 252.

There is compelling evidence to support Saunders' argument that the real reason she was fired was because she engaged in the protected activity of filing a complaint of sexual harassment.  Most significantly, Joseph Moore admitted that he had directed an employee to advertise Saunders' position the same day that she made her sexual harassment complaint, *because* she had made that complaint.  Joseph Moore also testified that he had made the decision to terminate Saunders' employment based in part on "the timing of the allegation."  Further, when Joseph Moore was asked about his negative performance assessment of Saunders, his response suggested that he thought Saunders was lying about having been sexually harassed.  Thus, each time that Joseph Moore was asked why he terminated Saunders' employment, his rationale included her complaint of sexual harassment.  These numerous admissions by Joseph Moore suggest that this may be "the rare case in which an employer admits not just to possessing an impermissible motive, but also to acting upon it."  *Id.* at 249 n.6.  Additionally, when coupled with this explicit

13

testimony of Joseph Moore, the evidence that Carter was treated more favorably than Saunders further supports her claim of retaliation.

These facts, taken together, undermine Metro's stated reasons for terminating Saunders' employment, creating a disputed issue of fact regarding whether Metro's alleged basis for firing Saunders was pretextual. We therefore hold that a jury reasonably could determine that Metro failed to articulate a legitimate, non-retaliatory basis for firing Saunders, and that her protected activity was the "real reason" Metro fired her. *Id.* at 252. Accordingly, we vacate the district court's award of summary judgment to Metro on the retaliation claim.[4]

IV.

In conclusion, we affirm the district court's decision setting aside the entry of default, as well as the court's award of summary judgment to Metro on the hostile work environment claim. We vacate the court's award of summary judgment on the retaliation claim, and we remand that claim to the district court for further proceedings.

*AFFIRMED IN PART,*
*VACATED IN PART,*
*AND REMANDED*

---

[4] The district court assumed without deciding that Saunders could establish a prima facie case of retaliation. We decline to address this issue in the first instance and remand for further proceedings.

14