**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-1697

WENDY MCKINNEY,

Plaintiff - Appellant,

v.

CLEVELAND COUNTY BOARD OF EDUCATION; MARK PATRICK; STEPHEN FISHER; JENNIFER WAMPLER,

Defendants - Appellees.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Max O. Cogburn, Jr., District Judge.  (3:20-cv-00221-MOC-DCK)

Submitted:  May 1, 2023                        Decided:  July 20, 2023

Before WILKINSON, AGEE, and THACKER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:** William Everett Moore, Jr., GRAY, LAYTON, KERSH, SOLOMON, FURR & SMITH, P.A., Gastonia, North Carolina, for Appellant.  Colin A. Shive, Richard A. Paschal, THARRINGTON SMITH, L.L.P., Raleigh, North Carolina, for Appellees Cleveland County Board of Education, Stephen Fisher, and Jennifer Wampler. Sarah M. Saint, Gary M. Parsons, Locke G. Ho, BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD, L.L.P., Greensboro, North Carolina, for Appellee Mark Patrick.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Wendy McKinney ("Appellant") worked for the Cleveland County School system for nearly 15 years before she was terminated in 2018. Appellant's termination stems from her numerous absences from work during the 2017–2018 and 2018–2019 school years. In this appeal, Appellant challenges the district court's dismissal of her civil action against her former employer which is rooted in her contention that she was wrongfully terminated for her inability to attend work due to her health-related issues. For the reasons below, we affirm.

## I.

In January 2003, Appellant began working for the Kings Mountain Intermediate School ("KMIS") as a substitute teacher. Later that year, KMIS merged with Cleveland County Schools. Aside from substitute teaching, Appellant worked in various roles for KMIS, including as a media assistant and a bus driver. In July 2013, Appellant accepted a position as a data manager with the North Shelby School ("NSS"), which is also in Cleveland County, and in 2015, she was promoted to bookkeeper. Appellant held the bookkeeper position until she was terminated by the Cleveland County Board of Education (the "Board") on December 14, 2018.

In the fall semester of the 2017, Appellant was absent from work 16 times, for either a full or half day, excluding vacation days. In the spring semester of 2018, Appellant's mother was diagnosed with cancer, and Appellant began to take leave pursuant to the Family and Medical Leave Act ("FMLA") so that she could take her mother to her doctor's appointments. In order to track Appellant's absences and maintain school operations,

2

Appellant's supervisor, Principal Mark Patrick ("Patrick"), asked Appellant to "prepare an unofficial spreadsheet of her absences, including the reason(s) why she would be absent, who would be substituting or covering for her during her absence(s), and stating whether the requested time would be covered under FMLA." J.A. 817.[1] A few months after Appellant's mother was diagnosed with cancer, Appellant learned that she was pregnant, and her pregnancy was classified as "high risk due to [her] age and health history." *Id.* at 818. Additionally, Appellant began to experience "severe and disabling arm pain," which could not be treated by pain medications due to her pregnancy. *Id.* Appellant was eventually diagnosed with a ruptured disk. In May of 2018, "a neurosurgeon wrote [Appellant] out of work due to the diagnosed back condition and her related inability to use her left arm." *Id.*

At end of the 2017–2018 school year, Appellant received a "conditional evaluation" indicating that her overall work performance needed improvement. J.A. 336. Pursuant to the Board's performance review policy, "[b]eing placed on a 'conditional' evaluation means that the employee's job is in jeopardy and that significant and sustained improvement must be demonstrated for continued employment." *Id.* Relevant here, the conditional evaluation noted, "[Appellant's] numerous absences have resulted in office duties and management lacking efficiency and effectiveness. It has required other staff members to cover her duties, which has impacted the daily operation of the school." *Id.* at 339. The conditional evaluation also emphasized that excluding Appellant's FMLA leave

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

and other approved leave of absences, Appellant missed more than 38.3 days during the 2017–2018 school year. The conditional evaluation also cited Appellant's "quality and knowledge of work" as areas in which she needed to improve. *Id.* at 338. Appellant submitted a written objection to the conditional evaluation, which essentially disagreed with the factual basis for her "needs improvement" rating.

Turning to the 2018–2019 school year, there is no dispute that Appellant's FMLA leave was exhausted as of July 2, 2018. At some point before the 2018–2019 school year began, Appellant requested additional FMLA leave despite the fact that she did not qualify "due to not meeting the 1250 hours requirement." *Id.* at 83.[2] Appellant's request for additional unpaid leave was granted "due to her long service with the district of 15 years." *Id.* Appellant intermittently used the additional unpaid leave in July 2018, and continuously used it from September 2018 through November 2018. In September 2018, Appellant met with Assistant Superintendent Jennifer Wampler ("Wampler") to request still more unpaid leave which would allow her to "deliver her baby in December 2018 and then undergo . . . ruptured disk surgery, which was expected to resolve [her] residual carpel tunnel symptoms." *Id.* at 821. Wampler advised Appellant that she could not approve any additional leave and that she "would have to recommend dismissal due to [Appellant] being

---

[2] To qualify for FMLA leave, an employee must have been "employed (i) for at least 12 months by the employer with respect to whom leave is requested and (ii) for at least 1,250 hours of service with such employer during the previous 12 month period." *Babcock v. BellSouth Advert. & Publ'g Corp.*, 348 F.3d 73, 76–77 (4th Cir. 2003) (alteration adopted and internal quotation marks omitted).

in continued violation of Board Policy on Excessive Absences." *Id.* at 822. Appellant subsequently submitted a written request to the Board seeking leave until January 2, 2019. On November 27, 2018, Wampler informed Appellant of the Board's decision to deny her request for additional unpaid leave.

On December 14, 2018, the Board sent Appellant a letter informing her of its decision to terminate her employment based on her "excessive absences." J.A. 75–76. In that letter, the Board emphasized that Appellant "ha[d] missed over 70 full time days of work and 15 partial days" as of December 1, 2018. *Id*. at 75.

On March 17, 2020, Appellant filed suit in state court against the Board, Patrick, Wampler, and the Cleveland County Schools Superintendent, Stephen Fisher ("Fisher") (collectively, "Appellees"). In the complaint, Appellant asserted the following claims: (1) wrongful discharge; (2) intentional infliction of emotional distress; (3) negligent infliction of emotional distress; (4) violation of the North Carolina Wage and Hour Act pursuant to N.C. Gen. Stat. § 95-25.2(5); (5) unlawful retention pursuant to N.C. Gen. Stat. §§ 115C-335.5, 168A-10, 126-85; (6) pregnancy discrimination pursuant to Title VII; (7) denial of a reasonable accommodation in violation of the Americans with Disabilities Act ("ADA"); (8) violation of Appellant's rights pursuant to the FMLA; (9) violation of Appellant's constitutional rights pursuant to 42 U.S.C. § 1983; and (10) punitive damages. The case was removed to the United States District Court for the Western District of North Carolina on April 15, 2020.

On November 19, 2020, the district court granted Appellees' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) with respect to all of Appellant's

5

claims except the FMLA, Title VII, and ADA claims.  In doing so, the district court determined that Appellant's wrongful discharge claim (count one) failed as matter of law because the Board is entitled to governmental immunity pursuant to North Carolina law. Next, the district court explained that the intentional and negligent infliction of emotional distress claims (counts two and three) must be dismissed because Appellant failed to allege intent to harm, nor did she allege "any facts supporting her conclusory allegation that she suffered severe emotional distress." J.A. 224–25.  Turning to the Wage and Hour Act claim (count four), the district court concluded that it failed as a matter of law for two reasons: (1) it was time-barred; and (2) Appellant's travel time to required meetings and to make bank deposits was not compensable as a matter of law.  As to Appellant's state law retaliation claim (count five), the district court dismissed this claim after finding that it was time-barred.  With respect to the punitive damages claim (count ten), the district court concluded that Appellant failed to allege that any of the individual defendants acted with the requisite intent and the Board was entitled to immunity from such a claim.  Moving to the federal claims, the district court determined that Appellant's section 1983 claim (count nine) failed as a matter of law because Appellant failed to allege a constitutional violation against any of the individual Appellees.  However, as noted above, the district court allowed Appellant's Title VII, FMLA, and ADA claims to proceed through discovery.

On March 25, 2022, the district court granted Appellees' motion for summary judgment and dismissed Appellant's remaining claims.  In the summary judgment order, the district court found that Appellant's Title VII claim must be dismissed because Appellant failed to make out a prima facie case of pregnancy discrimination.  On this point,

6

the district court emphasized that the "conditional evaluation in July 2019 defeats [Appellant's] ability to maintain a prima facie case under Title VII because [Appellant] was not working at a level that met her employer's legitimate job expectations." J.A. 833. Turning to the ADA claim, the district court concluded that summary judgment was appropriate because "[Appellant] has simply not shown that she could fulfill the essential functions of her position at the time she was terminated." *Id.* at 836. Lastly, as for the FMLA claim, the district court dismissed it after finding that "[Appellant] has presented no evidence that she was terminated for taking FMLA leave or that [she] was not granted the full amount of FMLA leave to which she was entitled." *Id.* Appellant subsequently filed a motion asking the court to reconsider its summary judgment order, which the district court denied on May 26, 2022.

Appellant timely filed her notice of appeal.

## II.

We review the district court's grant of Appellees' motion to dismiss and motion for summary judgment de novo. *See Vannoy v. Fed. Rsrv. Bank of Richmond*, 827 F.3d 296, 300 (4th Cir. 2016) (standard of review for motions for summary judgment); *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015) (standard of review for motions to dismiss). In both instances, we apply the same standard as the district court.

"We review a denial of a motion for reconsideration under the deferential abuse of discretion standard." *United States ex rel. Carter v. Halliburton Co.*, 866 F.3d 199, 206 (4th Cir. 2017).

7

III.

A.

Appellant argues that the district court erred in granting Appellees' motion to dismiss with respect to her section 1983, wrongful discharge, and negligent infliction of emotional distress claims.[3]  We address each claim in turn.

With respect to the section 1983 claim, "[s]ection 1983 provides for liability on every person who, under color of state law, subjects, or causes to be subjected, any citizen of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (alterations adopted and internal quotation marks omitted).  However, "[a]n official can be liable under § 1983 only where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights." *Thomas v. City of Annapolis*, 851 F. App'x 341, 347–48 (4th Cir. 2021).  Here, we agree with the district court that Appellant "failed to state a cognizable claim under § 1983 against any of the named defendants" because Appellant failed to sufficiently allege how any of the individual Appellees violated her

---

[3] The parties dispute which claims were sufficiently raised in Appellant's notice of appeal and opening brief to merit appellate review.  The notice of appeal makes clear that with respect to the motion to dismiss, Appellant is contesting the dismissal of the: (1) wrongful discharge in violation of public policy claim; (2) individual capacity claims against Patrick and Wampler; (3) negligent or reckless infliction of emotional distress claim; and (4) punitive damages claim.  However, as Appellees' point out, Appellant did not assert a reckless infliction of emotional damages in her complaint and Appellant did not affirmatively argue against the dismissal of her punitive damages claim in her opening brief.  Accordingly, Appellant has waived appellate review of her punitive damages claim.

8

constitutional rights and Appellant has not identified a valid statutory basis to support her claim. J.A. 229.

We turn now to the wrongful discharge claim, Appellant argues that the district court erred in determining that the Board was entitled to governmental immunity. Pursuant to North Carolina law, "the doctrine of governmental, or sovereign immunity bars actions against, *inter alia*, the state, its counties, and its public officials sued in their official capacity." *Herring ex rel. Marshall v. Winston-Salem/Forsyth Cnty. Bd. of Educ.*, 529 S.E.2d 458, 461 (N.C. App. 2000). However, a board of education may waive governmental immunity by obtaining liability insurance. *See Cash v. Granville Cnty. Bd. of Educ.*, 242 F.3d 219, 226 (4th Cir. 2001) (applying North Carolina law). Relevant here, it is well-settled that a board of education does not waive governmental immunity by participating in the North Carolina School Board Trust ("NCSBT").[4] *See Willett v. Chatham Cnty. Bd. of Educ.*, 625 S.E.2d 900, 901 (N.C. App. 2006) (declining to consider the plaintiff's argument that the board of education waived governmental immunity by entering into an agreement with the NCSBT because it was specifically rejected in another case). While Appellant disagrees with the Board that its agreement with the NCSBT does not constitute waiver of governmental immunity, she does not address the cases cited on

---

[4] The NCSBT "provides local boards of education the opportunity to budget funds for the purpose of paying all or part of a covered [c]laim made or civil judgment entered against the board or its members or [e]mployees or former members or [e]mployees, when such [c]laim is made or such judgment is rendered as damages on account of an act done or omission made, or an act allegedly done or omission allegedly made, in the scope of their duties as members of the local board of education or as [e]mployees." J.A. 155.

9

this point nor does she offer a legal basis for the disagreement.  Accordingly, because there is nothing in the record which suggests the Board waived its governmental immunity, we conclude that the district court did not err in dismissing Appellant's wrongful discharge claim.

As for Appellant's negligent infliction of emotional distress claim, Appellant contends that she "sufficiently alleged her emotional distress . . . with ample medical diagnoses and treatment to confirm her severe and disabling condition."  Appellant's Opening Br. at 45.  In order to establish a claim for negligent infliction of emotional distress pursuant to North Carolina law, "a plaintiff must allege that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress and (3) the conduct did in fact cause the plaintiff severe emotional distress."  *Newman v. Stepp*, 852 S.E.2d 104, 107 (N.C. 2020) (alteration adopted and internal quotation marks omitted).  The district court concluded that Appellant's negligent infliction of emotional distress claim failed as a matter of law because North Carolina law precludes negligence actions against co-employees and Appellant "failed to allege any facts supporting her conclusory allegation that she suffered severe emotional distress."  J.A. 224.  We agree with the district court.  Simply put, Appellant has not identified any allegations in her complaint which support her conclusion that she suffered severe emotional distress.  Consequently, the district court did not err in dismissing her claim for negligent infliction of emotional distress.

10

B.

Appellant argues that the district court erred in granting Appellees' motion for summary judgment because genuine disputes of material fact exist with respect to her Title VII, ADA, and FMLA claims. We disagree.

Starting with the Title VII claim, "[w]here, as here, a plaintiff does not allege direct evidence of discrimination, a plaintiff asserting discriminatory treatment under Title VII may avoid summary judgment by proceeding under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223 (4th Cir. 2019). This requires the plaintiff to establish: "(1) he was a member of a protected class; (2) he was *satisfactorily performing his job at the time of the termination*; (3) he was terminated from his employment; and (4) the prohibited conduct in which he engaged was comparable in seriousness to misconduct of other employees outside the protected class who received less severe discipline." *Id.* (emphasis supplied); *see also Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007) (noting that the employee must show "he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action"). Here, there is no dispute that prior to the termination, Appellant received a "conditional evaluation" indicating that her job was in "jeopardy." J.A. 336. While Appellant disagrees with Appellees' assessment of her performance, she has failed to present any evidence -- other than her self-serving written objection to the evaluation -- from which the court could conclude that she was, in fact, meeting her employer's expectations. As we have previously made clear, "[i]t is the perception of the

11

decision maker which is relevant, not the self-assessment of the plaintiff." *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003) (internal citation omitted). Because Appellant has not identified anything in the record which suggests that Appellees' believed that she was satisfactorily performing her job at the time she was terminated, we conclude that the district court did not err in dismissing her Title VII claim.

Appellant's ADA claim was also properly dismissed. The ADA prohibits employers "from discriminating against a qualified individual on the basis of disability." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 344 (4th Cir. 2013) (alteration adopted and internal citation omitted). "The ADA defines a qualified individual as an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Jessup v. Barnes Grp., Inc.*, 23 F.4th 360, 365 (4th Cir. 2022) (internal quotation marks omitted). In reaching the conclusion that summary judgment was appropriate on Appellant's ADA claim, the district court pointed to our decision in *Tyndall v. National Education Centers, Inc. of California*, where we stated, "[a]n employee who cannot meet the attendance requirements of the job at issue cannot be considered a qualified individual protected by the ADA." 31 F.3d 209, 213 (4th Cir. 1994). In *Tyndall*, we further explained, "[e]xcept in the unusual case where an employee can effectively perform all work-related duties at home, an employee who does not come to work cannot perform any of his job functions, essential or otherwise." *Id.* (internal quotation marks omitted). Here, there can be no genuine dispute that regular attendance is an essential function of Appellant's bookkeeping position. Indeed, this is evidenced by the Board's policy manual requiring "regular attendance . . . for all school

12

system employees," J.A. 345, and the conditional evaluation, which explained that Appellant's "numerous absences have resulted in office duties and management lacking efficiency and effectiveness," *id.* at 339. Because Appellant did not regularly come to work at the time she was terminated, and thus, was not a qualified individual as defined by the ADA, we conclude that the district court did not err in dismissing Appellant's ADA claim.

With respect to Appellant's FMLA claim, "[t]he FMLA entitles eligible employees to take twelve weeks of leave during any twelve-month period for a serious health condition that makes the employee unable to perform the functions of his job." *Vannoy v. Fed. Rsrv. Bank of Richmond*, 827 F.3d 296, 301 (4th Cir. 2016) (internal quotation marks omitted). As noted above, the district court determined that Appellees were entitled to summary judgment on Appellant's FMLA claim because it is undisputed that Appellant had exhausted her FMLA leave in July 2018 and "[Appellant] presented no evidence that she was terminated for taking FMLA leave or that [she] was not granted the full amount of FMLA leave to which she was entitled." J.A. 836. We agree. Because Appellant has not identified any evidence which suggests that she was terminated for taking FMLA leave, the district court properly dismissed Appellant's FMLA claim.

C.

Lastly, Appellant argues that the district court improperly denied her motion to reconsider the grant of summary judgment in favor of Appellees. Having already determined that the district court properly granted Appellees' motion for summary judgment, we conclude that the district court did not abuse its discretion in denying the motion for reconsideration.

13

IV.

For the reasons set forth above, we affirm the judgment of the district court.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*