In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-3091

MICHELLE FRAKES,

*Plaintiff-Appellant,*

*v.*

PEORIA SCHOOL DISTRICT NO. 150,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Central District of Illinois
No. 12-CV-1329 — **James E. Shadid**, *Chief Judge.*

ARGUED OCTOBER 26, 2016 — DECIDED SEPTEMBER 26, 2017

Before FLAUM, EASTERBROOK, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Michelle Frakes was honorably dismissed from her job as a special education teacher at Peoria School District No. 150 ("Peoria") in a voluntary reduction of force. Because Frakes had received "unsatisfactory" ratings as a teacher, state law placed her on the schedule of teachers to be dismissed. Displeased, Frakes filed a lawsuit against Peo-

ria alleging that her "unsatisfactory" performance rating constituted unlawful interference under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

The district court granted summary judgment in favor of Peoria, finding that Frakes failed to show that she engaged in any protected activity giving rise to a Section 504 claim. We agree. While Frakes provided some evidence that her "unsatisfactory" performance rating may have been unfair and her preferred teaching method may be better suited for disabled students, this does not render Frakes's teaching style a protected activity under Section 504. Frakes provided no evidence that she complained about or discouraged discrimination based on disability or engaged in any other activity protected by law.

In affirming the district court, we also reject Peoria's assertion that this case is barred by the doctrine of *res judicata*. Peoria waived this defense and agreed to defending lawsuits in both state and federal court by waiting over a year and a half to make a *res judicata* argument. That was too late.

## I.     BACKGROUND

### A.  Factual History

From August 2002 until May 2012, Frakes was a full-time special education teacher at Peoria. Beginning in August 2006, she was assigned to the Day Treatment Program, where she taught junior high (6-8th grade) students with various disabilities and behavioral and emotional disorders. All of Frakes's students were eligible for special education services under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and each student had an Individualized Education Plan ("IEP"), which mapped out their

level of performance, goals, benchmarks, accommodations, and modifications. The students were also all prescribed Behavioral Intervention Plans ("BIPs") to address behavior issues which interfered with their learning.

The events giving rise to Frakes's claim began in October of 2011, when Carolyn Nunn assumed the role of Assistant Principal of Day Treatment at Peoria and became Frakes's new supervisor. Nunn had worked as a speech-language pathologist for the school district for 18 years, was a qualified administrator, and had experience evaluating teachers. It was Nunn's responsibility to evaluate Frakes's performance. And, like all of Frakes's former supervisors,[1] Nunn observed several deficiencies in Frakes's teaching performance.

On February 1, 2012, Nunn gave Frakes an overall performance rating of "unsatisfactory." In her detailed evaluation, Nunn noted that Frakes struggled with classroom management and was often unprepared and unorganized in the classroom, for IEP meetings, and for faculty presentations. Nunn noted that Frakes did not collect data on her students' performance at the expected frequency, specifically observing that for one student Frakes only had three data points for an 18-week semester. Nunn's evaluation also pointed out that Frakes arrived late to work, leaving her class unsupervised. When she was in class, Frakes's lack of classroom management skills left her classroom "lack[ing] order and discipline"

---

[1] Both the district court and Peoria recounted in detail Frakes's history of "unsatisfactory" performance ratings and the criticisms she had received from her former supervisors, Shannon Marlin and Mary Camp. While we note that the record demonstrates that Frakes had struggled with classroom management and performance throughout her career, we do not find those facts necessary for our analysis.

and "extremely chaotic." The evaluation listed several specific examples during one classroom observation, in which Nunn detailed that students "ignore[d]" Frakes, would not comply with her orders, and that Frakes's "inability to effectively manage her classroom results in a significant amount of valuable instructional time being wasted."

When Frakes received this evaluation, she refused to sign it because she felt that the feedback was unfair. She contended that technology issues had affected her performance and were responsible for her problems with a presentation to other teachers, classroom instructions, and preparation of IEPs. She also argued that she was not given notice that she was expected to prepare an IEP by a specific deadline. She asserted that other teachers at the Day Treatment Program taught according to similar principles as she did. To formalize her opposition to her evaluation she drafted a document entitled "Points for Rebuttal." In this document she admitted that she needed improvement in her performance and at times she struggled with classroom management, but she defended her teaching methods and protested Nunn's harsh criticism. Frakes did not mention her students' rights or argue that her methods of teaching were better for her disabled students.

Frakes hand-delivered her "Points for Rebuttal" to the District's Human Resources Department. Still, as a result of her "unsatisfactory" rating, Frakes was placed on a remediation plan. Frakes's remediation plan gave her directions to improve in the areas of deficiency noted in the evaluation. Before the remediation period could begin, however, she informed the District that she was unable to work due to serious health conditions, and she was placed on medical leave status for the remainder of the school year. During the 2011-2012 school

year, neither Frakes, nor any parents, guardians, or other Peoria faculty filed an IDEA due process complaint or any formal complaint challenging a violation of a student's IDEA or Section 504 rights. There is no record that Frakes objected to anything in her students' IEPs or BIPs or complained that Nunn's evaluations encouraged discrimination against disabled students.

On April 9, 2012, Frakes was honorably dismissed due to the school district's decision to reduce its teaching force. As a result of her "unsatisfactory" rating, Frakes, along with nine other full-time tenured teachers, was placed in "Group 2" on the "sequence of honorable dismissal list" in accordance with Illinois law. In the voluntary reduction of force, the Board of Education approved the dismissal of 54 teachers, including Frakes. Frakes received notice of her honorable dismissal in a letter dated April 10, 2012. Her last day of employment was on May 31, 2012.

**B. Procedural History**

On September 4, 2012, Frakes filed a complaint against Peoria in the Circuit Court of Peoria County in Illinois, asserting wrongful termination based on Section 24-12 of the Illinois School Code. She did not raise any federal claims in this lawsuit, and it was defeated at the summary judgment stage. The state court found that the District did not violate the Illinois School Code.

A week before her state case was filed, on August 28, 2012, Frakes filed this case against Peoria in federal court, claiming violations of Section 504. Specifically, she claimed that her "unsatisfactory" evaluation and subsequent honorable dismissal interfered with her ability to aid students in exercising

their rights under Section 504. On April 9, 2015, Peoria moved for summary judgment. The district court granted judgment in favor of Peoria, finding that Frakes did not provide evidence that she engaged in activity protected by Section 504. Because it found summary judgment was appropriate, the district court did not address the District's *res judicata* argument. This appeal followed.

## II.    ANALYSIS

### A.  No Abuse of Discretion in Interpreting Local Rules

As an initial matter, Frakes challenges the district court's grant of summary judgment based on the court's application of Central District of Illinois Local Rule 7.1(D). District courts have "considerable discretion in interpreting and applying their local rules" and this court will "intrude on that discretion only where we are convinced that the district made a mistake." *Dr. Robert L. Meinders, D.C., Ltd. v. UnitedHealthcare, Inc.*, 800 F.3d 853, 858 (7th Cir. 2015) (quotation marks and citation omitted). We review a district court's enforcement of its local rules for an abuse of discretion. *Friend v. Valley View Cmty. Unit Sch. Dist.*, 789 F.3d 707, 710 (7th Cir. 2015).

At the time Frakes filed her motion opposing summary judgment, Local Rule 7.1(D) stated that a party opposing summary judgment must "list by number each fact from … the motion for summary judgment which is conceded to be material but is claimed to be disputed. Each claim of disputed fact must be supported by evidentiary documentation referenced by specific page." Loc. R. 7.1(D)(2)(b)(2). Under the rule, a "failure to respond to any numbered fact will be deemed an admission of fact." Loc. R. 7.1(d)(2)(b)(6).

Frakes failed to follow Local Rule 7.1(D). In opposing summary judgment, she did not identify material and disputed facts as required. Instead, she listed admitted facts as disputed and added supplementary explanations to them (stating in her brief, "Plaintiff admits this matter, but has it listed as disputed."). The district court noted that Frakes's violation of the rule impeded judicial economy, and found "[t]he failure to follow the Local Rules requires the Court to do an extensive scouring of the record to determine if these are actual disputed facts … ." So, the court refused to consider Frakes's supplemental explanations to admitted facts and deemed "admitted, but disputed" facts to be simply admitted. We find the court made no error in doing so.

Contrary to Frakes's contention, Local Rule 7.1(D) does not conflict with Rule 56 of the Federal Rules of Civil Procedure. While Rule 56 does not require the point-counterpoint framework for summary judgment required by Local Rule 7.1(D), the district court was within its right to establish and enforce a local rule requiring this framework. Rule 83 of the Federal Rules of Civil Procedure explicitly provides that a district court may adopt and amend local rules so long as they are consistent with, but not duplicative of, the Federal Rules.

Even if Local Rule 7.1(D) was merely a "requirement of form" Frakes would have no recourse. A "local rule imposing a requirement of form must not be enforced in a way that causes a party to lose any right because of a nonwillful failure to comply." Fed. R. Civ. P. 83(a)(2). Here, Frakes's attorney's failure to comply was willful, and the district court's enforcement of its local rules did not cause Frakes to lose any rights. The district court noted that Frakes's counsel was admonished by the court for violating the same local rule in earlier

summary judgment briefings, yet counsel knowingly chose to violate the rule again. Further, Frakes was given a fair opportunity to oppose summary judgment. Any failure to properly support her argument with evidence was her own doing.

Where a local rule is substantive and not just a "requirement of form," a district courts' enforcement is entitled to even greater discretion. The Advisory Committee Notes (1995 Amendment) inform us that Rule 83(a)(2) does not diminish "the court's power to enforce local rules that involve more than mere matters of form—for example, a local rule requiring parties to identify evidentiary matters relied upon to support or oppose motions for summary judgment." Frakes failed to comply with just such a prototypical substantive local rule. So, we grant deference. *See, e.g., Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 537 (7th Cir. 2011) (affirming district court's application of its local rules and distinguishing between "substantive" and "of form" local rule violations.).

Frakes further argues that the Advisory Committee considered and rejected a point-counterpoint requirement within Federal Rule of Civil Procedure 56, and that many esteemed judges and authors do not support such a requirement. These arguments are not helpful. The value and efficiency of Local Rule 7.1(D) is not a question we need address. The Central District of Illinois has discretion to set its local rules, we ask only whether the court fairly applied its rule. We find that it did. The district court was well within its discretion to consider only evidence presented in accord with Local Rule 7.1(D).

**B.  No Evidence Frakes Engaged in Protected Activity**

We review the district court's grant of summary judgment *de novo*, applying the same standards as the district court and construing all facts and reasonable inferences in the light most favorable to Frakes. *CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014). Summary judgment is appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Id.*; Fed. R. Civ. P. 56(a).

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, is a sister statute to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12131–12134. As amended, Section 504 is a civil rights law that prohibits discrimination on the basis of disability by recipients of federal funds, including public schools like Peoria. 29 U.S.C. § 794. In the employment discrimination context, Section 504 mirrors the standards applied under Title I of the ADA, including the provisions of Sections 501 through 504, and 510 as they relate to employment. 29 U.S.C. § 794(d) (citing 42 U.S.C. § 12111, *et seq.* and 42 U.S.C. §§ 12201–12204; 12210). Put simply, Section 504 employment discrimination is controlled by the standards of the ADA and a claim for "interference" pursuant to Section 504 is established pursuant to the standards of the ADA.

Under the ADA anti-interference provision, it is unlawful to "coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on the account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by [the ADA]." 42 U.S.C. § 12203(b). While this court has not previously addressed an interference claim made pursuant to the

ADA or Section 504, we agree with the district court and the Ninth Circuit that guidance can be found in our application of the anti-interference provision of the Fair Housing Act ("FHA"), 42 U.S.C. § 3617; *see Brown v. City of Tucson*, 336 F.3d 1181, 1191 (9th Cir. 2003) (applying the FHA interference standard to an ADA interference claim). Because the ADA anti-interference clause is identical to the anti-interference clause found in the FHA, *compare* 42 U.S.C. § 3617 *with* 42 U.S.C. § 12203(b), we use the FHA framework to establish the legal standard for an ADA interference claim. In doing so, we determine that a plaintiff alleging an ADA interference claim must demonstrate that: (1) she engaged in activity statutorily protected by the ADA; (2) she was engaged in, or aided or encouraged others in, the exercise or enjoyment of ADA protected rights; (3) the defendants coerced, threatened, intimidated, or interfered on account of her protected activity; and (4) the defendants were motivated by an intent to discriminate. *See Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009) (en banc) (providing the framework for an FHA interference claim).

We first look to whether Frakes engaged in protected activity. Protected activities are those statutorily protected under the ADA, including opposing or complaining about discrimination based on disability. Common examples of protected activities are formal complaints of discrimination or reporting a public school's failure to provide a free, appropriate public education to students with disabilities.

Here, Frakes asserts that she engaged in protected activity when she refused to change her teaching methods following Nunn's negative performance evaluation. However, this ar-

gument fails because there is no evidence that Frakes's opposition to Nunn's evaluation was an assertion of rights on behalf of her disabled students. While Frakes argues, for the purposes of this lawsuit, that her teaching methods were preferred for behaviorally and emotionally disabled students, the evaluation and Frakes's "Points of Rebuttal" do not reflect a dispute over the best teaching methods for disabled students. In fact, there is no mention of the students' rights or interests at all. And, while we find no reason to doubt that it was Frakes's intention to best serve her disabled students, the law protects assertions of rights, not teaching methods. The fact that Frakes taught students who are protected by the ADA does not alone render her teaching "protected activity."

The court need not evaluate whether Frakes's classroom strategy or teaching methods were, in fact, satisfactory. Even if there were evidence that Nunn's evaluation of Frakes was faulty or Nunn lacked qualifications as an evaluator, there is nothing in the record that indicates Frakes's teaching style would be protected under the ADA. Again, what Frakes was required to show is that she was asserting rights of disabled students or challenging disability discrimination. If Frakes had challenged Nunn's instructions because they violated a student's rights, such as by asserting that Nunn's instructions would force Frakes to violate the terms of a student's IEP, her claim might survive. But, that is not the case here. Frakes only argues that her teaching methods could be better for some students; this is subjective and lacks statutory protection. Because Frakes fails to demonstrate that she engaged in a protected activity, her Section 504 claim fails.

### C.  Suit Not Barred by *Res Judicata*

Peoria asserts that this suit is barred by *res judicata* because Frakes had a full and fair opportunity to litigate her Section 504 claims in a related state court case. We find that Peoria waited too long to raise the affirmative defense of *res judicata.* By waiting over a year and a half to raise this defense, Peoria acquiesced to claim splitting and *res judicata* does not bar Frakes's claims. *See Lawler v. Peoria Sch. Dist. No. 150*, 837 F.3d 779 (7th Cir. 2016).

### III.    CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment is AFFIRMED.