**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 21-2261**

───────────────

GREGORY WARREN KELLY,

        Plaintiff – Appellant,

   v.

TOWN OF ABINGDON, VIRGINIA,

        Defendant – Appellee.

───────────────

Appeal from the United States District Court for the Western District of Virginia, at Abingdon.  James P. Jones, Senior District Judge.  (1:19-cv-00032-JPJ-PMS)

───────────────

Argued:  September 20, 2023                            Decided:  January 2, 2024

───────────────

Before WILKINSON and GREGORY, Circuit Judges, and MOTZ, Senior Circuit Judge.

───────────────

Affirmed by published opinion.  Senior Judge Motz wrote the opinion, in which Judge Wilkinson and Judge Gregory joined.

───────────────

**ARGUED:**  Monica Lynn Mroz, STRELKA EMPLOYMENT LAW, Roanoke, Virginia, for Appellant.  Cameron Scott Bell, PENN, STUART & ESKRIDGE, Abingdon, Virginia, for Appellee.  **ON BRIEF:**  Thomas E. Strelka, L. Leigh R. Strelka, STRELKA EMPLOYMENT LAW, Roanoke, Virginia, for Appellant.  Ramesh Murthy, PENN, STUART & ESKRIDGE, Abingdon, Virginia, for Appellee.

───────────────

DIANA GRIBBON MOTZ, Senior Circuit Judge:

Gregory Kelly brought claims against his former employer, the Town of Abingdon, for discrimination, retaliation, interference, and failure to accommodate in violation of the Americans with Disabilities Act ("ADA"). This appeal arises from the district court's dismissal of Kelly's discrimination and interference claims, and its legal ruling that a letter Kelly sent the Town in January 2018 was not an accommodation request under the ADA. Because Kelly alleged no facts (1) warranting an inference of disability discrimination; or (2) connecting his asserted "accommodation request" to his disabilities, we must affirm the judgment of the district court.

I.

Kelly appeals the dismissal of his original complaint for failure to state a claim, and the partial denial of his amended complaint on futility grounds. We recount the facts as alleged in Kelly's amended complaint, and take them as true for the purpose of this appeal. *See, e.g.*, *Minor v. Bostwick Labs., Inc.*, 669 F.3d 428, 430 n.1 (4th Cir. 2012).

A.

On March 1, 2005, the Town of Abingdon hired Kelly as Town Attorney. One year later, the Town appointed him Town Manager, subject to an employment contract that guaranteed him nine months' severance pay. As Town Manager, Kelly was responsible for managing the Town's day-to-day business affairs, supervising town employees, and responding to inquiries from stakeholders. Kelly alleges that he excelled in this role, and exceeded the Town's expectations throughout his employment.

2

According to Kelly, that all changed when Town Hall became embroiled in political infighting. He maintains that, over time, the elected Mayor and Town Council engaged in an escalating pattern of "unprofessional and . . . outrageous behavior" that created a caustic work environment for town employees. Elected officials allegedly humiliated and harassed directors and staff members, and leveraged the threat of termination to advance their political agendas. Among other examples, Kelly contends that Mayor Wayne Craig harassed Kelly's staff and undermined his ability to manage them; that former Mayor Cathy Lowe threatened to fire Kelly if he did not "get on board" with her political goals and appoint her personal friends to favorable positions; and that Vice Mayor Rick Humphreys berated Kelly in public meetings — and subjected him to drunken, belligerent, profane phone calls at odd hours of the night.[1]

Kelly suffers from anxiety, depression, and high blood pressure. As the hostility at work intensified, Kelly asserts that his health deteriorated, and his disabilities became intolerable. He maintains that he endured crippling anxiety, disorientation, insomnia, and hopelessness; his blood pressure spiked, he experienced dizzy spells, and he had panic attacks at work, disrupting his ability to perform basic tasks. And he claims that Town employees and department heads witnessed the mistreatment he suffered and its deleterious

---

[1] Kelly alleges that he was not the only employee subjected to this mistreatment. He claims that Town Attorney Deborah Icenhour and Town Clerk Cecile Rosenbaum were also targets of the Council's ire; both joined his letter to the Town and ultimately resigned. He also alleges that the same council members mistreated the Director of Tourism and Director of Public Works, and harassed other unnamed Town staff. Additionally, he notes that Rosenbaum reported being sexually harassed in Town Hall, and Mayor Craig made light of her harassment.

3

effects on his health. They allegedly congregated in Kelly's office after Council meetings to console him, bought him a blood pressure monitor, and urged him to seek medical attention.

As conditions deteriorated, in September and December 2017, Kelly filed Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). According to Kelly, "all of the department heads" were aware of his EEOC charges, and "his filings were a well-discussed subject matter at the office." He also asserts that these charges informed the Town of his disabilities,[2] and that the Town responded by sifting through his private communications and escalating its pattern of harassment.

On January 10, 2018, a law firm representing Kelly and two of his colleagues sent a letter to Town authorities seeking changes to "the daily office environment" at Town Hall. Although this letter (the "January 2018 Letter") was entitled "Accommodations Requests," and referenced the Americans with Disabilities Act in its opening line, the letter's "overall aim" was "to foster a well-running office, based on the principles of mutual respect, clear communication, and . . . well-defined roles." It articulated twelve "requests" to facilitate this goal, including compliance with the Code of Ethics; adherence to defined roles; an end to the incessant threats of termination; courtesy and care in communications; equal treatment for employees; improved gender diversity in hiring and management; an acknowledgment that Town Management is a team; and the development of written

---

[2] The record does not contain these EEOC charges. However, during oral argument, both parties acknowledged that the charges described Kelly's disabilities, and the Town conceded that its officials knew that Kelly suffers from anxiety, depression, and high blood pressure.

4

policies governing workplace conduct.  The letter did not mention Kelly's anxiety, depression, or high blood pressure, and did not explain how the proposed changes might alleviate these disabilities.

Several months later, in April 2018, Kelly claims that the Town's legal counsel sent him a "token communication," informing him that the Town would engage in an interactive process to determine an appropriate accommodation for his disabilities.  Kelly reached out to the Town to explore possible accommodations, and asked his supervisors to grant him "short breaks and reduced stress."  He also discussed his disabilities with Lowe, Humphreys, Craig, and other council members through a series of individual meetings, and informed them of the deleterious toll the situation at Town Hall was taking on his health and well-being.

According to Kelly, the Town rebuffed his attempts to pursue an interactive process. Kelly claims the council members declared they are "not subject to the requirements of ordinary business employers."  Then, according to Kelly, they stepped up their harassment. Various elected officials increased Kelly's workload and escalated their threats to replace him or terminate his employment.  They addressed him with profanity, berated him in public meetings, ridiculed him for parking away from Town Hall to preserve his health, and countermanded his instructions to Town directors and employees.

Kelly resigned on May 7, 2018, claiming constructive discharge.

## B.

On July 27, 2018, Kelly filed another Charge of Discrimination with the EEOC — his third, following the EEOC charges he filed in September and December of 2017.  The

5

EEOC issued a Dismissal and Notice of Right to Sue on May 22, 2019. Kelly filed suit on August 18, 2019, asserting claims for discrimination, retaliation, failure to accommodate, and interference, all in violation of the ADA. He also raised a claim for breach of contract, grounded in the Town's failure to award him nine months' severance pay in accordance with his employment agreement.

On November 1, 2019, the Town filed a motion to dismiss. Following a hearing, the district court granted this motion as to Kelly's ADA claims, but permitted his breach of contract claim to proceed. Kelly requested leave to amend, filing a proposed Amended Complaint with new allegations targeting the deficiencies identified by the district court. On May 20, 2020, the court granted this motion in part and denied it in part — accepting the Amended Complaint as to his retaliation and accommodation claims, and denying the motion as futile with respect to his discrimination and interference claims.

Although the district court allowed Kelly's retaliation and accommodation claims to proceed, the court curtailed the scope of these claims. Specifically, the court ruled as a matter of law that the January 2018 Letter was not an accommodation request, and could not serve as a predicate for either claim. This decision limited Kelly's accommodation claim to his request for "short breaks and reduced stress," and restricted the scope of his retaliation claim to his allegations of escalating harassment following his EEOC filings. The court ultimately entered summary judgment for the Town on the surviving ADA claims, but permitted the breach of contract claim to proceed to trial, where a jury rendered a verdict for the Town.

6

On appeal, Kelly challenges the district court's dismissal of his ADA discrimination and interference claims, and its legal determination that the January 2018 Letter is not an accommodation request within the contemplation of the ADA. The district court made these rulings when it granted the Town's motion to dismiss his original complaint, and partially denied his motion to amend on futility grounds. Both rulings are evaluated under Rule 12(b)(6), and we review both decisions de novo. *See Buscemi v. Bell*, 964 F.3d 252, 262 (4th Cir. 2020); *Davison v. Randall*, 912 F.3d 666, 690 (4th Cir. 2019). As Kelly's Amended Complaint offers more detailed allegations in support of his claims, we focus our review on the district court's evaluation of the proposed Amended Complaint. *See, e.g.*, *United States ex rel. Ahumada v. NISH*, 756 F.3d 268, 273–74 (4th Cir. 2014); *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 112 (4th Cir. 2013).

## II.

Kelly initially argues that the district court erred when it limited the scope of his retaliation and accommodation claims by ruling that the January 2018 Letter was not an accommodation request under the ADA.[3] *See Lashley v. Spartanburg Methodist Coll.*, 66

---

[3] The Town argues that we cannot reach this issue because the district court accepted Kelly's Amended Complaint as to his accommodation and retaliation claims, and permitted both claims to proceed into discovery based on other theories. But "an interlocutory order from which no appeal lies is merged into the final judgment and open to review on appeal from that judgment." *Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 120 (4th Cir. 2015) (quoting *Hellerstein v. Mr. Steak, Inc.*, 531 F.2d 470, 474 (10th Cir. 1976)). Kelly could not have previously appealed the district court's finding that the January 2018 Letter is not an accommodation request, as that finding was embedded in the court's interlocutory order granting his motion to amend. *Cf. Bridges v. Dep't of Md. State Police*, 441 F.3d 197, 206 (Continued)

F.4th 168, 179 (4th Cir. 2023) (holding that an employer cannot be liable for failure to accommodate until the employee has provided notice of his need for an accommodation); *Haulbrook v. Michelin N. Am., Inc.,* 252 F.3d 696, 706 (4th Cir. 2001) (holding that an accommodation request constitutes protected activity that may sustain a retaliation claim). We reject this argument. Although Kelly plausibly alleged that the Town was aware of his anxiety, depression, and high blood pressure, the January 2018 Letter did not inform the Town that he was seeking accommodations for these conditions.

The Americans with Disabilities Act requires employers to provide their disabled employees with reasonable accommodations that enable them to fulfill the essential duties of their positions. 42 U.S.C. § 12112(b)(5)(A); *see also Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 378 (4th Cir. 2022). Employers need only accommodate "the known physical or mental limitations of an otherwise qualified employee with a disability." *See Wirtes v. City of Newport News*, 996 F.3d 234, 238 (4th Cir. 2021) (cleaned up). Before an employer is required to accommodate a disabled employee, "the employee must make an adequate request, thereby putting the employer on notice." *Lashley*, 66 F.4th at 179 (quoting *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 347 (4th Cir. 2013)); *see also Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165 (5th Cir. 1996) ("[I]t is the employee's initial request for an accommodation which triggers the employer's obligation to participate in the interactive process of determining one.").

---

(4th Cir. 2006) ("A [ruling on] a motion to amend a complaint is not a final order, nor is it an appealable interlocutory or collateral order."). That order has now merged into the final judgment, and can properly be challenged on appeal.

It is not difficult to request an accommodation. To trigger an employer's duty to accommodate, a disabled employee need only "communicate[] [his] disability and desire for an accommodation." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 581 (4th Cir. 2015). In this initial request, an employee need not specify "the precise limitations resulting from the disability," *see Lashley*, 66 F.4th at 179 (cleaned up), or "identify a specific, reasonable accommodation," *Jacobs*, 780 F.3d at 581. Rather, when a valid request leaves "the precise nature of the disability or desired accommodation" ambiguous, the employer should seek clarification. *Mueck v. La Grange Acquisitions, L.P.*, 75 F.4th 469, 487 n.14 (5th Cir. 2023) (quoting *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 804 (7th Cir. 2005)). That is because ADA regulations contemplate that the employer will pursue an "informal, interactive process" with its disabled employees to ascertain the extent of their disabilities and the range of accommodations that might address them. *Wilson*, 717 F.3d at 346 (quoting 29 C.F.R. § 1630.2(o)(3)).

Neither party disputes that Kelly informed the Town that he suffers from anxiety, depression, and high blood pressure. The Town conceded this point during oral argument, and the Amended Complaint alleges as much. Kelly claims that the EEOC charges he filed in late 2017 placed the Town on notice of his disabilities; that the department heads were aware of his charges of discrimination; and that "his filings were a well-discussed subject matter at the office." *Cf. Sydnor v. Fairfax County*, 681 F.3d 591, 593 (4th Cir. 2012) (observing that an EEOC filing "ensures that the employer is put on notice of the alleged violations" (quoting *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005))). Accepted as true, and viewed in Kelly's favor, these allegations suggest the Town knew of Kelly's

9

disabilities at all relevant times.  And as the Town had notice of Kelly's disabilities, this appeal turns on whether the January 2018 Letter adequately communicated his desire for an accommodation.

While the burden of requesting an accommodation is light, not every work-related request by a disabled employee constitutes a request for accommodation under the ADA. Our sister circuits have held that while a request need not "formally invoke the magic words 'reasonable accommodation,' it nonetheless must make clear that the employee wants assistance for his or her disability." *Foster v. Mountain Coal Co.*, 830 F.3d 1178, 1188 (10th Cir. 2016) (cleaned up); *Ballard v. Rubin*, 284 F.3d 957, 962 (8th Cir. 2002); *Jones v. United Parcel Serv.*, 214 F.3d 402, 408 (3d Cir. 2000); *see also Gaines v. Runyon*, 107 F.3d 1171, 1175 (6th Cir. 1997) (requiring "a causal relationship" between the disability and the putative request).  The adequacy of a request depends on how a reasonable employer would view the employee's communication in the surrounding circumstances. *Kowitz v. Trinity Health*, 839 F.3d 742, 747–48 (8th Cir. 2016); *Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318, 332 (3d Cir. 2003) ("[C]ircumstances must at least be sufficient to cause a reasonable employer to make appropriate inquiries about the possible need for an accommodation.").  To properly invoke the ADA, the communication must be "sufficiently direct and specific," providing notice that the employee needs a "special accommodation" for a medical condition. *EEOC v. C.R. Eng., Inc.*, 644 F.3d 1028, 1049 (10th Cir. 2011) (quoting *Calero-Cerezo v. DOJ*, 355 F.3d 6, 23 (1st Cir. 2004)).

This is consistent with agency guidance on the ADA's accommodation provisions. The EEOC has opined that an employee seeking an accommodation "need not mention the

10

ADA or use the phrase 'reasonable accommodation,'" but must inform his employer that the employee requires "an adjustment or change at work for a reason related to a medical condition." EEOC, *Enforcement Guidance: Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act*, 2002 WL 31994335, at *4 (Oct. 17, 2002); *see also Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) (holding that "[a]n employee is not required to use any particular language when requesting an accommodation but need only inform the employer of the need for an adjustment due to a medical condition." (cleaned up)).

These limitations enable employers to differentiate between protected requests for accommodation and everyday workplace grievances. As discussed above, to kickstart the interactive process, "the employee must make an adequate request, thereby putting the employer on notice." *Lashley*, 66 F.4th at 179 (quoting *Wilson*, 717 F.3d at 347). But an employee may seek changes to his working conditions for any number of reasons unrelated to a disability, such as "the kind of personality conflict that pervades many a workplace." *Ziskie v. Mineta*, 547 F.3d 220, 227 (4th Cir. 2008). Merely labelling a list of suggestions an "accommodation request" is not enough to inform the employer that the employee is requesting workplace changes to address his disabilities, rather than other, unrelated issues. Accordingly, just as an employee need not "formally invoke the magic words 'reasonable accommodation,'" *Foster*, 830 F.3d at 1188 (cleaned up), those magic words are not sufficient to trigger the employer's duty to pursue the ADA interactive process. Instead, to place the employer on notice, there must be a logical bridge connecting the employee's disability to the workplace changes he requests. Though this bridge need not be explicit in

11

the accommodation request, the substance of the request must permit the employer to infer that the request relates to the employee's disability. The substance of the employee's communication, not its title, determines whether the ADA applies.

That logical bridge is absent here. Although the January 2018 Letter is entitled "Accommodations Requests," and references the ADA in its opening line, its content has no connection to anyone's disabilities. Its stated theme is only "to foster a well-running office based on the principles of mutual respect, clear communication, and . . . well-defined roles." Most of the letter's suggestions — such as gender diversity in hiring, respect for defined roles, and adherence to the Town Charter — have no perceptible relation to Kelly's disabilities at all. Accordingly, the letter's substance undercuts its label. A reasonable employer could well read this letter only as a list of grievances and suggestions issued in response to workplace politics and personality conflicts. As the January 2018 Letter simply does not "make clear that [Kelly] wants assistance for his [] disability," *Foster*, 830 F.3d at 1188 (quoting *C.R. Eng.*, 644 F.3d at 1049), the district court did not err in concluding that this letter was not an accommodation request within the meaning of the ADA.[4]

---

[4] Kelly claims the district court erred by finding that the twelve requests outlined in the January 2018 Letter were not "reasonable accommodations for his specific disability." He argues that an ADA plaintiff need not prove that an accommodation is reasonable at the motion to dismiss stage. *Cf. Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 507–08 (4th Cir. 2016) ("[I]t 'is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits.'" (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 280 (2d Cir. 2003)). But the district court did not find that the changes listed in the January 2018 Letter were unreasonable or unfeasible — it found they were not accommodation requests at all.

Kelly maintains that it is immediately apparent why a more organized, less stressful working environment would alleviate his anxiety, depression, and high blood pressure. But that alone does not change the substance of the letter or transform the letter into a request for accommodations. *See id.*; *Jacobs*, 780 F.3d at 581 (holding that the employee must communicate a desire for an accommodation); *C.R. Eng., Inc.*, 644 F.3d at 1049 (holding that a request must be "sufficiently direct and specific" (cleaned up)). Personality conflicts, technical difficulties, and challenging assignments can all exacerbate anxiety symptoms. But employees frequently request workplace changes to address these situations for reasons other than their disabilities, such as workplace comfort or efficiency. Under Kelly's argument, an employee with anxiety would be entitled to the full protections of the ADA anytime his employer could anticipate that such changes might ameliorate his symptoms. Such a result would be untenable.[5]

## III.

Kelly next argues that the district court erred by dismissing his ADA discrimination claim, and denying leave to amend on this issue. Because he offers no facts that warrant a reasonable inference of disability discrimination, we must also reject this argument.

---

[5] At all times, the relevant question is whether the employee has placed the employer on notice of his desire for an accommodation by connecting his request to his disabilities. For example, an employee who informs his supervisor that workplace personality conflicts are exacerbating his anxiety symptoms may or may not be entitled to an accommodation. But an employee who complains about such conflicts in a vacuum, and does not provide the context that would permit an employee to connect this concern to his disabilities, has not requested an accommodation under the ADA.

13

The ADA prohibits wrongful discharge as a form of disability discrimination.[6] To state a claim for wrongful discharge, the plaintiff must allege that "(1) he was a qualified individual with a disability; (2) he was discharged; (3) he was fulfilling his employer's legitimate expectations at the time of discharge; and (4) the circumstances of his discharge raise a reasonable inference of unlawful discrimination." *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012) (cleaned up) (quoting *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 272 n.9 (4th Cir. 2004)). Kelly plausibly alleges that he is disabled, that he was constructively discharged,[7] and that he was fulfilling the Town's legitimate expectations at the time of his constructive discharge. But he alleges no facts suggesting that the Town harbored a discriminatory motive.

To raise a reasonable inference of disability discrimination in a wrongful discharge case, an employee must allege that his disability was a "but-for" cause of his termination. *Gentry v. E.W. Partners Club Mgmt. Co.*, 816 F.3d 228, 235–36 (4th Cir. 2016). "The

---

[6] "Because the ADA echoes and expressly refers to Title VII, and because the two statutes have the same purpose—the prohibition of illegal discrimination in employment—courts have routinely used Title VII precedent in ADA cases." *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 176 (4th Cir. 2001); *accord Israelitt v. Ent. Servs. LLC*, 78 F.4th 647, 655 n.8 (4th Cir. 2023); *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 470 (4th Cir. 1999). Accordingly, our precedent for evaluating discrimination and retaliation claims under Title VII informs our analysis of the same theories of relief under the ADA.

[7] An employee is "constructively discharged" if he resigns after his "working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Green v. Brennan*, 578 U.S. 547, 555 (2016) (cleaned up). Kelly offers specific examples of pervasive hostile conduct and asserts that his working conditions exacted a debilitating toll on his physical and mental health. He also claims that this conduct escalated in frequency and severity in the months preceding his resignation. The district court found these claims sufficient to plausibly allege constructive discharge. For the purpose of this appeal, we assume that the district court was correct.

14

mere fact that a certain action is potentially consistent with discrimination does not alone support a reasonable inference that the action was motivated by bias." *See Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020). If "we would have to 'speculate' to 'fill in the gaps'" regarding the defendant's motive, the circumstances do not warrant a reasonable inference of discrimination. *See id.* (quoting *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 586 (4th Cir. 2015)). Kelly acknowledges that he "has not pled specific facts that allege a causal connection" between the Town's conduct and his disabilities. Instead, he argues that the same allegations that support his failure-to-accommodate and retaliation claims also support a reasonable inference of discrimination. We are not persuaded.

First, Kelly asserts that the Town's failure to engage in an interactive process after he submitted the January 2018 Letter supports an inference of disability discrimination. *See, e.g.*, *Sheng v. M&TBank Corp.*, 848 F.3d 78, 86–87 (2d Cir. 2017) (holding "that an employer's failure to engage in a good faith interactive process can be introduced as evidence tending to show disability discrimination"). Because the January 2018 Letter was not a valid accommodation request, this argument fails.

Second, Kelly argues that the temporal proximity between his EEOC filings and his constructive discharge, coupled with the Town's escalating hostility during this period, supports a reasonable inference of discrimination. He relies not on discrimination cases but on retaliation cases to so argue. In retaliation cases, temporal proximity suggests a correlation between an employee's protected action and his employer's adverse reaction. *Holloway v. Maryland*, 32 F.4th 293, 300 (4th Cir. 2022). If the two events are attenuated,

15

"courts may look to the intervening period for other evidence of retaliatory animus." *Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).

Although there is some evidentiary overlap between discrimination and retaliation,[8] discrimination and retaliation claims rely on different theories of motive. "[T]he ultimate question in every employment discrimination case . . . is whether the plaintiff was the victim of intentional discrimination." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 295 (4th Cir. 2010) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000)). In contrast, "[t]he very premise of a retaliation claim is that the employer has subjected an employee to adverse consequences in response to her complaint of discrimination." *Wilcox v. Lyons*, 970 F.3d 452, 460 (4th Cir. 2020). An employer who retaliates against an employee for lodging a complaint is not necessarily motivated by discriminatory animus. *Cf. id.* ("The necessary causal link is between the employee's complaint and the adverse action, not between her sex and the adverse action."). Accordingly, while temporal proximity between an EEOC charge and a retaliatory act may support a discrimination claim, the two theories do not always coincide. To present an

---

[8] In a discrimination case, no less than a retaliation case, "close temporal proximity weighs heavily in favor of . . . causation." *Cowgill*, 41 F.4th at 380 (cleaned up); *see, e.g.*, *id.* at 381 (holding that an "extremely short time gap" between an employee's use of approved FMLA leave and placement on an improvement plan supported an inference of discrimination); *Jacobs*, 780 F.3d at 575 (holding that an employee's firing "three weeks after sending her e-mail disclosing her disability and requesting an accommodation" raised a jury question as to discriminatory motive).

inference of discrimination, the plaintiff must allege that the employer was motivated by his disability, not simply his protected action.

Here, while Kelly's allegations sufficed to state a retaliation claim, they do not raise an inference of discrimination. At most, his claim that the Town retaliated against him following his EEOC filings is "potentially consistent" with disability discrimination. *Bing*, 959 F.3d at 618. But Kelly fails to connect the dots. He offers nothing to suggest that the Town mistreated him because of his disabilities, rather than personal and political conflicts. *See Gentry*, 816 F.3d at 236 (requiring plaintiff to establish "but-for" causation between their disability and their discharge). Nor does he claim the Town treated others differently: According to the Amended Complaint, many of the same council members harassed the Town Attorney, the Town Clerk, the Director of Public Works, the Director of Tourism, and other unnamed town staff. *Cf. Cowgill*, 41 F.4th at 381 (emphasizing that "evidence that other employees who were similarly situated to the plaintiff (but for [his disability]) were treated more favorably" is "especially relevant" (quoting *Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 719 (4th Cir. 2013))). Because the district court could only have inferred disability discrimination by speculating as to the Town's motivation, *Bing*, 959 F.3d at 618, it did not err in dismissing Kelly's discrimination claim.

IV.

Finally, Kelly argues that the district court erred in dismissing his claim for ADA interference, and denying leave to amend with respect to this issue. Because he offers no

17

allegation suggesting that the Town harbored a discriminatory motive or took any steps to prevent him from exercising his ADA rights, we also must reject this argument.

An employer may not "coerce, intimidate, threaten, or interfere with" an employee's efforts to exercise his rights under the Americans with Disabilities Act. *See* 42 U.S.C. § 12203(b). We have not yet interpreted § 12203(b), but both parties apply the framework adopted by the Seventh Circuit, requiring an employee to allege as follows:

> (1) [he] engaged in activity statutorily protected by the ADA; (2) [he] was engaged in, or aided or encouraged others in, the exercise or enjoyment of ADA protected rights; (3) the defendants coerced, threatened, intimidated, or interfered on account of [his] protected activity; and (4) the defendants were motivated by an intent to discriminate.

*Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550–51 (7th Cir. 2017); *see also Brown v. City of Tucson*, 336 F.3d 1181, 1191 (9th Cir. 2003). The statutory term "interfere with" is broader than retaliation, and captures "all practices which have the effect of interfering with the exercise of rights" under the ADA. *See Brown*, 336 F.3d at 1191 (cleaned up). But it is not read "so broad as to prohibit 'any action whatsoever that in any way hinders a member of a protected class.'" *Id.* at 1192 (quoting *Mich. Prot. & Advocacy Serv. v. Babin*, 18 F.3d 337, 347 (6th Cir. 1994)).

Assuming without deciding that the foregoing standard applies,[9] Kelly fails to state a claim for ADA interference. First, he offers nothing to suggest that the Town "coerced,

---

[9] The Seventh Circuit adopted the foregoing four-factor test from Fair Housing Act ("FHA") cases on the grounds that the ADA's interference provision, 42 U.S.C. § 12203(b), closely mirrors the FHA's interference provision, 42 U.S.C. § 3617. *See Frakes*, 872 F.3d at 550; *see also Brown*, 336 F.3d at 1191. But because we have yet to interpret the FHA's interference provision, that same line of reasoning may not yield the (Continued)

18

threatened, intimidated, or interfered" with the exercise of his rights under the ADA. *Frakes*, 872 F.3d at 551. Although the Town's hostile conduct assertedly exacerbated Kelly's disabilities, he makes no allegation that the Town engaged in this behavior in order to prevent him from filing EEOC charges, requesting further accommodations, or pursuing another protected action under the ADA. And the mere fact that this conduct might have had an adverse effect on his health does not amount to unlawful interference. *Cf. Brown*, 336 F.3d at 1192 (holding that interference requires more than action that "hinders a member of a protected class" (cleaned up)).

Second, even if Kelly could plead the interference element, he fails to allege that the Town harbored a discriminatory motive for the reasons discussed above. Kelly claims that the Town was rife with political turmoil, that Town Hall was filled with charged, conflicting personalities, and that he often found himself in conflict with elected officials. Those allegations paint a picture of a workplace characterized by hostility and conflict. But however seriously the conditions at Town Hall may have exacerbated Kelly's anxiety, depression, and high blood pressure, Kelly fails to allege that Town officials harassed him because of these disabilities. Absent such allegations, he fails to show that the Town was "motivated by an intent to discriminate." *Frakes*, 872 F.3d at 551. Accordingly, the district court did not err by dismissing his interference claim.

---

same result. Moreover, at least one Circuit reads the FHA's interference provision in a manner that does not require discriminatory motive. *See Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96, 112–13 (3d Cir. 2017). As the parties did not brief or argue the parallels between the FHA and the ADA, or the different prevailing interpretations of both provisions, we reserve this issue for another case.

19

V.

For the foregoing reasons, the judgment of the district court is in all respects

*AFFIRMED.*