**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 23-2013**

───────────

JOHN SIGLEY,

Plaintiff - Appellant,

v.

ND FAIRMONT LLC, a/k/a ND Paper, LLC, ND Paper/Fairmont, LLC,

Defendant-Appellee.

───────────

Appeal from the United States District Court for the Northern District of West Virginia, at Clarksburg.  Thomas S. Kleeh, Chief District Judge.  (1:22-cv-00052-TSK)

───────────

Argued:  September 27, 2024                              Decided:  February 21, 2025

───────────

Before KING and RICHARDSON, Circuit Judges, and FLOYD, Senior Circuit Judge.

───────────

Affirmed by published opinion.  Senior Judge Floyd wrote the opinion in which Judge King and Judge Richardson joined.

───────────

**ARGUED:**  Hoyt Eric Glazer, GLAZER SAAD ANDERSON L.C., Huntington, West Virginia, for Appellant.  Kelby T. Gray, DINSMORE & SHOHL LLP, Charleston, West Virginia, for Appellee. **ON BRIEF:**  William E. Robinson, DINSMORE & SHOHL LLP, Charleston, West Virginia, for Appellee.

───────────

FLOYD, Senior Circuit Judge:

John Sigley appeals the district court's grant of summary judgment to his employer ND Fairmont LLC (NDF) on a discriminatory discharge claim under the Americans with Disabilities Act (ADA). Because we find that NDF terminated Sigley for his dishonesty, not for his alleged disability, we affirm.

I.

On August 9, 2021, Sigley applied for a Material Handler position with NDF, a paper product manufacturer that owns a mill in Fairmont, West Virginia. Material Handlers are responsible for tasks like product loading and inspection and therefore must meet certain "physical requirements" such as "lifting, pushing, stooping, and standing for long periods of time." J.A. 56. On August 26, 2021, NDF extended Sigley an offer conditioned on his ability to pass a physical—a requirement for all new Material Handlers. NDF contracts with a third party, Industrial Therapy Solutions (ITS), to conduct post-offer physicals. "ITS clinicians assess each new hire's musculoskeletal history and status, along with the new hire's safety when performing certain functional activities." J.A. 253.

Sigley completed his physical on September 8, 2021, including any accompanying paperwork. First, he reviewed the Informed Consent Checklist and initialed the following statement: "I understand that giving false, incomplete, incorrect or misleading information will be cause for termination of my employment." J.A. 74, 254. Next, Sigley and an ITS clinician completed the Health History Questionnaire. In response to its question "Do you

2

have a back fracture, strain, sprain, pain, stiffness, weakness, scoliosis, disc injury, disc rupture, arthritis or injury," Sigley responded "Never." J.A. 75, 254–55. And when asked, "Have you seen a chiropractor, doctor, or physical/occupational therapist for your back," Sigley also responded "Never." *Id.*

After completing the Questionnaire with Sigley, the clinician signed the following statement: "I have discussed the medical questionnaire with the candidate and have informed the candidate that omitting or misrepresenting information on this form or with the therapist during this screening process, may be grounds for dismissal from employment." J.A. 77, 255. Sigley then reviewed the Questionnaire a second time, added his initials, and completed the remainder of the screening process.

Sigley passed his physical and began working for NDF on September 13, 2021. The parties agree that Sigley performed his job effectively during his first several weeks of employment. However, on October 28, 2021, Sigley suddenly called out of work, stating to Joyce Hardway, NDF's Human Resources Manager: "I'm not getting any sleep for some reason and I don't think I would be safe at all … I will be in tomorrow." J.A. 84. Sigley later asked Hardway if they could meet the next day. Hardway scheduled a meeting, but, when Sigley ran into Hardway at the facility, he asked her to step outside to talk and said that "he needed to tell her about his 'disability.'" J.A. 256. Hardway suggested that they continue the conversation in her office.

Sigley and Hardway moved to Hardway's office and were joined by Justin Darrah, NDF's Environmental Health & Safety Manager. Sigley disclosed to Hardway and Darrah that he had undergone three back surgeries in the past two years and had a metal rod in his

3

back.  He explained that he sometimes experiences back spasms and that the spasms were the "real reason" he missed work the day before.  J.A. 88.  He added that he did not provide any information about his back injury during his physical.

After the meeting, Hardway "communicated with ITS for the limited purpose of confirming the accuracy of Mr. Sigley's statement that, as part of his post-offer examination, he had not disclosed any information and history relating to his back condition."  J.A. 88, 148.  ITS verified the omission and forwarded copies of Sigley's Informed Consent Checklist and Questionnaire to Hardway and Darrah.  Hardway concluded that, despite several clear warnings, Sigley "provided false, incorrect, and misleading information during [his] examination," and, on November 2, 2021, NDF terminated Sigley "as a result of that misconduct."  J.A. 88.

In response, Sigley filed the instant action against NDF, alleging a single count of "Disability Discrimination Under the ADA."  J.A. 10–11; *see also* 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.").  While the Court finds Sigley's exact discrimination theory difficult to follow, the complaint ultimately alleges that his termination was "based on his status as a person with a disability."  J.A. 11.

Following discovery, both parties moved for summary judgment.  But, in addition to discriminatory discharge, Sigley's motion discussed two unpled ADA claims: breach of confidentiality and failure to accommodate.  *See* J.A. 17–21 (arguing that NDF "improperly

4

accessed Mr. Sigley's confidential medical information" and "should have communicated with him about a possible accommodation"); *see also* 42 U.S.C. § 12112(d)(3)(B) (medical information obtained during an employer's post-offer physical "is treated as a confidential medical record"); *id.* § 12112(b)(5)(A) (employers violate the ADA by "not making reasonable accommodations" for a qualifying "applicant or employee").

For its part, NDF's motion argued that Sigley's discriminatory discharge claim failed on a number of independent grounds: (1) Sigley is neither actually disabled nor regarded as disabled under the ADA; (2) he failed to show that "but-for" his disability he would not have been terminated; and, similarly, (3) even assuming that he can demonstrate a *prima facie* case of discriminatory discharge, he cannot show that NDF's "legitimate, nondiscriminatory reason" for terminating him (i.e., that he "provided false, incorrect, and misleading information during [his] examination") (J.A. 88) was pretext.

The district court reviewed the arguments and concluded: "At the crux of the motions for summary judgment is whether, after Sigley had voluntarily shared his confidential medical information to Ms. Hardway on October 29, 2021, the ADA prohibits Ms. Hardway from inquiring about Sigley's medical information included in the Informed Consent Checklist and History Questionnaire he had signed pre-employment." J.A. 265. The court held that the inquiry was not prohibited because the ADA's confidentiality provision, 42 U.S.C. § 12112(d)(3)(B), is inapplicable "[w]hen an employee voluntarily discloses confidential medical information." J.A. 267. Because the court found this holding "dispositive of Sigley's claim," it determined that it "need not address the parties' other arguments." J.A. 265.

5

The district court then granted NDF's summary judgment motion, denied Sigley's summary judgment motion, and dismissed Sigley's complaint with prejudice. Sigley now timely appeals. He argues to this Court: "the uncontested record establishes [NDF] fired Mr. Sigley only because he had notified it of his longstanding, history of back problems." Opening Br. 6.

## II.

We review the district court's grant of summary judgment de novo, "applying the same legal standards as the district court, and viewing all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party." *Shipton v. Balt. Gas & Elec. Co.*, 109 F.4th 701, 705 (4th Cir. 2024) (quoting *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 208 (4th Cir. 2017)). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

## A.

We begin by analyzing Sigley's discriminatory discharge claim, as this is the sole count alleged in his complaint. *See* J.A. 7–12 ("Count 1 [of 1]: Disability Discrimination Under the ADA"); *see also* Reply Br. 1 & n.1 (arguing that this case does not "hinge[] on the confidentiality, if any, of Mr. Sigley's medical information" as "Count I pleads the

6

*prima facie* elements of [discriminatory discharge]").

To survive summary judgment on this claim, Sigley must first establish a *prima facie* case of discriminatory discharge.  This requires "produc[ing] evidence sufficient to demonstrate that (1) he 'was a qualified individual with a disability'; (2) he 'was discharged'; (3) he 'was fulfilling h[is] employer's legitimate expectations at the time of discharge'; and (4) 'the circumstances of h[is] discharge raise a reasonable inference of unlawful discrimination.'"  *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012) (quoting *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 273 n.9 (4th Cir. 2004)).  Assuming (without deciding) that Sigley can demonstrate the first three prongs, his claim fails at the fourth: Sigley has not provided sufficient evidence to demonstrate that the circumstances of his discharge raise a reasonable inference of unlawful discrimination.

Instead, Sigley merely concedes that he lied about his back injury during his physical (*see* J.A. 97–98, 123; *see also* Oral Arg. 9:12–9:20) and that NDF cited his dishonesty as the reason for his termination (J.A. 123; *see also* Response Br. 32).  In this way, to find that NDF "was motivated by his disability," we would have to ignore the only "reasonable inference" that the record sufficiently demonstrates: NDF terminated Sigley because he was dishonest.  *Kelly v. Town of Abingdon*, 90 F.4th 158, 169–71 (4th Cir. 2024) (rejecting discrimination claim where plaintiff "fails to connect the dots" and "the district court could only have inferred disability discrimination by speculating").[1]

---

[1] Sigley does suggest that he was fired soon after his employer simultaneously learned of his dishonesty and his disability.  His firing's proximity to the event that revealed both dishonesty and disability, however, creates no reasonable inference that he was fired (Continued)

In light of his concessions, Sigley pivots to arguing that his eventual disclosure of his disability "prohibited [NDF] from taking adverse action against him." Opening Br. 18. But this Court has long recognized that "misconduct—even misconduct related to a disability—is not itself a disability, and an employer is free to fire an employee on that basis." *Martinson v. Kinney Shoe Corp.,* 104 F.3d 683, 686 n.3 (4th Cir. 1997); *Hannah P. v. Coats*, 916 F.3d 327, 341 (4th Cir. 2019) (same); *Vannoy v. Fed. Rsrv. Bank of Richmond*, 827 F.3d 296, 305 (4th Cir. 2016) (same); *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 465 (4th Cir. 2012) (same, e.g., termination for disability-related absences or disability-related intoxication does not constitute discrimination).

In other words, "[t]he ADA does not require an employer to simply ignore an employee's blatant and persistent misconduct, even where that behavior is potentially tied to a medical condition." *Hannah P.*, 916 F.3d at 341 (quoting *Vannoy*, 827 F.3d at 305); *see also Neal v. E. Carolina Univ.*, 53 F.4th 130, 152 (4th Cir. 2022) ("Neal wants to have it both ways, arguing she was … dismissed on the basis of her Bipolar Disorder, yet demanding that ECU had to overlook … [her misconduct] because of evidence about her subsequently diagnosed mental impairment. The ADA has no such requirement.").

As applied here, Sigley admits that he was dishonest, and dishonesty is misconduct worthy of termination, even if it is connected to a disability. *See*, *e.g.*, *Carter v. Tennant Co.*, 383 F.3d 673, 676–80 (7th Cir. 2004) (holding termination legitimate and non-

---

because of his disability rather than his dishonesty. *See Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617–18 (4th Cir. 2020) (rejecting discrimination claim where plaintiff admitted a coinciding "non-discriminatory basis for his termination").

discriminatory where Carter "did not tell Tennant about his Gurnee injury or on-going medical care and benefits when he completed the [pre-employment health] questionnaire"); *Tran v. Novo Nordisk Pharm. Indus., Inc.*, No. 5:14-CV-254, 2016 WL 1559137, at *9 (E.D.N.C. Apr. 18, 2016) ("Dishonesty may be a legitimate, non-discriminatory cause for termination.") (citing cases); *Shipman v. United Parcel Serv., Inc.*, No. 5:12-CV-589, 2013 WL 5525005, at *12 (E.D.N.C. Oct. 3, 2013), *aff'd*, 581 F. App'x 185 (4th Cir. 2014) (unpublished) ("UPS has articulated a legitimate, non-discriminatory reason for Shipman's January 2012 discharge: she was terminated for 'falsification of company records and documents, dishonesty, and overall work record.'"); *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1116 (D.C. Cir. 2000) ("Intentional dishonesty on an employment application surely constitutes a [legitimate, non-discriminatory] reason" for termination.).[2]

In sum, because of the unrefuted evidence of Sigley's dishonesty, no reasonable

---

[2] Because Sigley does not make out a *prima facie* case of discrimination, we need not actually determine whether NDF offers a "legitimate, non-discriminatory reason" for termination under the *McDonnell-Douglas* burden-shifting framework (*see Hannah P.*, 916 F.3d at 432 (outlining framework)), but we find these holdings informative.

Perhaps equally informative are holdings that dishonesty can doom a breach of ADA confidentiality claim. *See Dillon v. Norfolk S. Ry. Co.*, 35 F. Supp. 3d 896, 909 (E.D. Mich. 2014) ("[T]his Court [cannot] sanction a no-win proposition for any employer. That is, if an employee provides false information that goes undetected during an ADA authorized examination but later comes to light, the employer could either: (1) use the information … and risk liability… or (2) don't use the information and therefore encourage employees to be less than forthcoming during such examinations…. Th[e] protective shield provided to employees by the ADA cannot also be used by these employees as a sword to defend an employee's own dishonest conduct."); *see also EEOC v. Aurora Health Care, Inc.*, No. 12-CV-984, 2015 WL 2344727, at *17 (E.D. Wis. May 14, 2015) (The ADA cannot be read to "give prospective employees a free pass to lie" during medical exams, as this "might render pre-employment physicals worthless.").

9

trier of fact could find that his discharge raises a reasonable inference of unlawful discrimination. We therefore agree with the district court that NDF is entitled to summary judgment. *See Jones v. Solomon*, 90 F.4th 198, 214 (4th Cir. 2024) ("[W]e may affirm a grant of summary judgment on any ground that the law and the record permit." (quoting *Hodgin v. UTC Fire & Sec. Ams. Corp.*, 885 F.3d 243, 251 n.3 (4th Cir. 2018))).

B.

Next, we address NDF's alleged breach of ADA confidentiality. Under 42 U.S.C. § 12112(d)(3)(B), medical information obtained during an employer's post-offer physical must be "treated as a confidential medical record." Sigley's summary judgment motion argues that NDF violated § 12112(d)(3)(B) by "improperly access[ing] Mr. Sigley's confidential medical information" to confirm his dishonesty. J.A. 17–21. However, as outlined in Section III.A, Sigley's complaint does not plead a breach of confidentiality claim. Instead, he alleges a single count of disability discrimination under § 12112(a).

At bottom, § 12112(a) claims (involving discrimination) and § 12112(d) claims (involving medical inquiries) are separate causes of action, and Sigley did not pursue both.[3] *See Coffey v. Norfolk S. Ry. Co.*, 23 F.4th 332, 336 n.1 (4th Cir. 2022) (§ 12112(d) claims

---

[3] The complaint occasionally cites § 12112(d), but it does so only to allege that "[NDF's] application for employment requested Mr. Sigley to identify his medical conditions as prohibited by the ADA." J.A. 7–12. During discovery, Sigley admitted that NDF's application did not seek any medical information. The parties later stipulated to the same: "Sigley's employment application with NDF requested no medical or other unlawful information." J.A. 253.

"stand apart from general claims of discrimination under § 12112(a)" such that a discrimination analysis is "not relevant"); *see also EEOC v. McLeod Health, Inc.*, 914 F.3d 876, 880–83 (4th Cir. 2019) (analyzing § 12112(d) counts as standalone claims); *Hannah P.*, 916 F.3d at 337–45 (same); *Reynolds*, 701 F.3d at 149–55 (same).

Because Sigley failed to amend his complaint, we find this separate confidentiality claim untimely and do not address its merits. *See Cloaninger v. McDevitt*, 555 F.3d 324, 336 (4th Cir. 2009) ("[A] plaintiff may not raise new claims after discovery has begun without amending his complaint."); *see also S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy.").

And, in any event, Sigley concedes on appeal that confidentiality is not at issue: "This is not, as the Appellee believes, a case whose determination hinges on the confidentiality, if any, of Mr. Sigley's medical information…. [T]he harm is not that the Defendant learned about [Mr.] Sigley's medical information; the harm is that [it] terminated him based on the information itself." Reply Br. 1.

## C.

Finally, we address NDF's alleged failure to accommodate Sigley. Under 42 U.S.C § 12112(b)(5)(A), an employer violates the ADA by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." Although failure to accommodate is a "form of discrimination," *Perdue v. Sanofi-Aventis U.S., LLC*, 999 F.3d

11

954, 959 (4th Cir. 2021), Sigley's complaint does not allege that NDF failed to accommodate him. *See* J.A. 7–12. In fact, his complaint concedes that he did not require an accommodation. *See* J.A. 10 (Sigley "performed all the functions of his job" without an accommodation). Therefore, like with breach of confidentiality, this claim is untimely.

But even if timely asserted, the claim is facially meritless. In line with conceding that he did not require an accommodation, Sigley admits that he never requested one. *See* Oral Arg. 3:00–3:27. And "[i]t is the employee's initial request for an accommodation which triggers the employer's obligation to participate in the interactive [accommodation] process." *Kelly*, 90 F.4th at 166 (quoting *Taylor v. Principal Fin. Grp, Inc.*, 93 F.3d 155, 165 (5th Cir. 1996)); *see also id.* ("Before an employer is required to accommodate a disabled employee, 'the employee must make an adequate request, thereby putting the employer on notice.'" (quoting *Lashley v. Spartanburg Methodist Coll.*, 66 F.4th 168, 179 (4th Cir. 2023))).

## IV.

For the foregoing reasons, the judgment of the district court is affirmed.

*AFFIRMED*